THE STATE ex rel. JOHN T. BARKER, Attorney-General, Appellant, v. CHICAGO & ALTON RAILROAD COMPANY.

In Banc, July 12, 1915.*

1. PLEADING: Meaning of Petition: Plaintiff's Interpretation: Estoppel. Having in his brief characterized his petition himself, plaintiff is estopped from saying the court should otherwise name it, if his admission leads him into trouble upon a demurrer thereto.

2. ————: ————: In the Light of Its Prayer. The prayer of a petition is a clear index to the construction placed upon the petition by the pleader.

Held, by BOND, J., dissenting, that it is the language of the pleadings alone that fixes their meaning and determines the questions presented for review; and that neither the prayer of the petition, nor any exhibits thereto, are subject to demurrer, and nothing is open to that objection but the stating part of the petition.

3. ————: Illegal Passenger and Freight Charges: Suit to Recover for State and Passenger and Shippers. The petition in this suit, brought in the name of the State by the Attorney-General as relator against a railroad company, as shown by its averments and the construction given it by the Attorney-General in his brief, is one which attempts to collect the excessive freight and passenger charges collected by the defendant during a named period, not only for the State, but for the numerous passengers and shippers. [BOND, J., dissenting.]

4. ILLEGAL PASSENGER AND FREIGHT CHARGES: Right of Passengers and Shippers to Recover Excess. For illegal charges exacted by a railroad company in excess of rates fixed by a valid statute, the passenger or shipper may sue for himself to recover such excess charged and collected from him in fares or in freight rates.

5. ————: Right of State to Recover. For illegal freight or passenger charges exacted by a railroad company in excess of rates fixed by valid statutes, the State may recover the excess of passenger fares collected from the State's officers and servants traveling in behalf of and at the expense of the State and the excess charges collected for shipping freight of any kind for the State. It can sue just as any private corporation or individual may sue to recover money to which he or it is entitled. The suit is not one in its governmental capacity for private passengers and shippers, but one in its corporate capacity to recover money illegally exacted from it as such.

*NOTE.—Decided June 29, 1915. Motions to modify judgment and for rehearing overruled July 12, 1915.

State ex rel. v. Chicago & Alton R. R. Co.

6. ———: **Recovery by State for Shippers and Passengers:
Misjoinder of Parties.** But the State cannot sue for shippers
and passengers to recover for them, as a trust fund held by
defendant railroad company or otherwise, moneys exacted and
collected from them in rates and fares in excess of the maxi-
mum charges permitted by the statutes, as for money had and
received, even though the State sues for itself and all others
similarly situated. Nor is the right of the State to maintain
such a suit affected by the fact that the excessive charges were
exacted of the shippers and passengers during the time that
intervened after the United States Circuit Court, in an injunc-
tion suit brought against the Attorney-General, had declared the
statutes fixing the maximum rates were invalid and before the
United States Supreme Court on appeal had held the statutes
to be valid. A demurrer to such a petition will lie on the
statutory ground "that a party plaintiff or defendant is not a
necessary party to a complete determination of the suit."

*Held*, by BLAIR, J., concurring, that so much of the petition
  as seeks to recover the overcharges exacted of it is sepa-
  rable from those parts which seek to recover for private
  shippers and passengers for overcharges exacted of them,
  and these latter should be disregarded as surplusage and
  redundant, and when that is done the petition states a good
  cause of action for the State. Anyhow, the State can re-
  institute its action for itself alone.

*Held*, by BOND, J., dissenting, that, if this were an action on
  the bond, or a motion under the statute to assess damages
  proximately caused by the injunction, the bond given would
  be the measure of the liability of the defendant, in the
  absence of evidence that the injunction was a malicious
  abuse of process, although the damages sustained exceeded
  the amount of the bond. But that rule has no application
  where, as in this case, the suit is not brought for damages
  proximately caused by the injunction, but is brought to
  recover what the defendant exacted at its peril during the
  pendency of an injunction on appeal which was finally held
  to have been illegally awarded.

*Held*, also, that the rule is inexorable that a petition
  which states any cause of action, however defec-
  tively or imperfectly, is not subject to attack by general de-
  murrer; and a petition which states that defendant railroad
  company had exacted and received from the State fifty
  thousand dollars in freight charges and the passenger fares
  of its officers in violation of statutes during the time the
  validity of those statutes were in litigation, that they had
  finally been held to be valid by the Supreme Court of the
  United States, that the records of the State showing the
  items of such overcharges were facts peculiarly within the
  possession of defendant, and praying for an accounting,

and for judgment for money had and received, states a cause of action for the State, and is not subject to dismissal on general demurrer.

*Held*, also, that said cause of action has not been destroyed or lost by allegations that other persons have similar causes of action which could be litigated in the one suit if they should be permitted to come in, and asking, without naming them or setting out their respective claims, that they be permitted to come in as parties in their own right and allege and prove their separate demands; and the petition should not be dismissed on a demurrer charging multifariousness and misjoinder of causes, for a demurrer, which lies only for the actual misjoinder of several causes of action, does not lie and cannot reach a mere proposal by the plaintiff to other persons to come in and set up any cause of action they may have.

*Held*, also, that multifariousness or misjoinder of causes of action cannot exist unless there be two or more causes of action united in one petition, each of which, as stated, will support a judgment; and a mere proposal by plaintiff to other persons similarly situated to come in and litigate their claims will not authorize the court, upon a demurrer asserting multifariousness, to dismiss the case, in anticipation of the coming in of such other persons.

*Held*, also, that the petition in this case names no one but the State as plaintiff, and a holding that the "petition gives the State and the shippers and passengers as plaintiffs" is unwarranted, and the petition should not be held to be multifarious on any such ground.

7. ————: ————: **Right of State to Redress Private Wrongs.** A suit to collect from a railroad company freight and passenger charges in excess of the maximum amounts permitted by valid statutes, whether exacted of the State or private citizens, is a suit to enforce a private right, and to collect claims separately exacted; and the State has no right to enforce mere private rights. When the State sues for itself and all other shippers and passengers similarly situated, it does not sue in its governmental capacity, but in its corporate capacity, just as a private corporation or individual does, to enforce a private right.

8. ————: ————: ————: **Suit for Itself and Others Similarly Situated.** The equitable rule which permits persons similarly situated to sue in the name of the class has no application to many claims dependent upon different proof. Besides, that rule is largely dissipated by the Code, which requires all cases ·(legal or equitable) to be brought by the party interested. The rule should be construed rigidly as to the State in all cases in which it assumes to sue in its corporate capacity for the redress of private wrongs to itself and to its citizens similarly situated growing out of the exaction by a railroad company, in

violation of statutes, of excessive passenger fares and freight rates.

*Held,* by WOODSON, C. J., concurring, that the rule that one person may join all others similarly situated and interested as plaintiffs in a suit based on a violation by defendant of a general statute, applies only when the one act of defendant was common to and affected all the plaintiffs alike, and the same cause of action exists in favor of all of them.

9. ——— :———: ———: **Intermeddling Between Private Citizens.** The State should not be permitted through its public officers to assist adversaries to a private controversy. The public funds should not be used to assist one private citizen to establish his claim against another. It is not the part of the State to intermeddle in the claim of a shipper or passenger against a railroad company for a freight charge or passenger fare charged him in excess of the statutory rate, and to undertake to collect the excess for him.

*Held,* by BOND, J., dissenting, that the State, as a public corporation, has power to sue, in its own courts, for the recovery of money which has been illegally exacted from it by a violation of its laws.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*John T. Barker,* Attorney-General, and *W. T. Rutherford, Lee B. Ewing, T. J. Higgs* and *S. P. Howell,* Assistant Attorneys-General, for appellant; *W. M. Williams, W. M. Fitch* and *J. P. Gilmore* of counsel.

(1) It is fundamental, in law and equity, that where a party to an action obtains a rule, order, judgment or decree in his favor, and under or by means of it secures money or property, and afterwards such rule, order, judgment or decree is set aside, or reversed, then such party must restore or return all money or property received thereunder or thereby. The defendant, therefore, upon the reversal of its decree in the Federal court, under and by means of which it was enabled to charge and collect the excess charges sued for, became obligated to refund or restore the same, and an action for money had and received, or in the nature thereof, lies therefor. 3 Cyc. 462, 469; 18

Ency. Pl. & Pr., 871; 2 Freeman on Judgments (4 Ed.), secs. 481, 482; 1 Beach on Injunctions, 348; Spelling on Injunctions and Other Extraordinary Remedies, sec. 1096; 1 Joyce on Injunctions, 525; Carson v. Suggett, 34 Mo. 364; Gott v. Powell, 41 Mo. 416; Railroad v. Brown, 43 Mo. 294; Marshall v. Allenberg, 100 Mo. 337; Colburn v. Yantis, 176 Mo. 670; Board of Trustees v. Fry, 192 Mo. 552; Lanyon v. Chesney, 209 Mo. 1; Turner v. Edmonsten, 210 Mo. 411; St. Louis v. Gaslight Co., 70 Mo. 69; St. Louis v. Gaslight Co., 80 Mo. 349; Haebler v. Meyers, 132 N. Y. 363; Wangelin v. Goe, 50 Ill. 459; Railroad v. Taylor, 134 Ill. 603; Herrington v. Herrington, 11 Ill. App. 121; Starke v. Lewis, 23 Miss. 151; Shoe Co. v. Kaiser, 108 Ga. 767; New York v. Brown, 179 N. Y. 303; Lumber Co. v. Dardell, 84 Ark. 140; Pulteney v. Warren, 6 Ves., Jr., 73; Railroad v. North Little Rock, 79 Ark. 48; Cumming v. Mugge, 94 Ill. 186; Vanzandt v. Mining Co., 2 McCr. 642; Railroad v. Barker, 210 Fed. 902; Hawkes v. Champion, Cary, 51; Douche v. Perrot, Cary, 63; Hill v. Portman, Cary, 140; Bank v. Bank, 6 Pet. 8; Fuel Co. v. Brock, 139 U. S. 216; Williams v. Simmons, 22 Ala. 425; Marks v. Cowles, 61 Ala. 299; Ex parte Walter Brothers, 89 Ala. 237; McJilton v. Love, 13 Ill. 486; Martin v. Woodruff, 2 Ind. 237; Zimmerman v. Bank, 56 Iowa, 133; Parry v. Tupper, 71 N. C. 385; Lytle v. Lytle, 94 N. C. 522; Fleming v. Riddick, 5 Gratt. (Va.) 272; Hier v. Brewing Co., 60 Neb. 320; Thompson v. Reasoner, 122 Ind. 454; United States v. Rithstein, 187 Fed. 268; Brown v. Trust Co., 193 Fed. 672; Crocker v. Clements, 23 Ala. 296; Dupuy v. Roebuck, 7 Ala. 484; Simmons v. Price, 18 Ala. 405; Reynolds v. Harris, 14 Cal. 667; Raun v. Reynolds, 18 Cal. 275; Ward v. Sherman, 155 Cal. 287; Chambers v. Vandler, 94 Ga. 210; Warren v. Bunch, 80 Ga. 124; Hays v. Carroll, 70 Ill. 666; McElwee v. Eice, 80 Ill. App. 338; Smith v. Dent, 83 Ind. 87; Hess v. Deppen, 125 Ky. 424; Mooney v. Corcoran, 15 La. 46; Bryant v. Fairchilds, 51 Me. 149;

Delano v. Wilde, 11 Gray (Mass.), 17; Cummings v. Noyes, 10 Mass. 434; Peck v. McLean, 36 Minn. 228; Lipp v. Hunt, 29 Neb. 256; Thompson v. Carroll, 36 N. H. 21; Eames v. Stevens, 26 N. H. 117; Murrary v. Wiener, 32 N. H. 361; Scott v. Conover, 10 N. J. L. 61; Murray v. Berdell, 98 N. Y. 480; Britton v. Phillips, 24 How. Pr. 111; Rollins v. Henry, 77 N. C. 538; Boyett v. Vaughn, 86 N. C. 725; Bickett v. Garner, 31 Ohio St. 28; Metschen v. Grant County, 36 Ore. 117; McFadden v. Swinerton, 36 Ore. 336; Beuscoten v. Long, 167 Pa. St. 595; Whitrell v. Peck, 176 Pa. St. 170; Caruthers v. Caruthers, 2 Lea (Tenn.), 71; Gates v. Vrinkley, 4 Lea (Tenn.), 710; Perticles v. Carpenter, 53 Tex. 23; Stanard v. Brownlow, 3 Munf. (Va.) 229; Keck v. Allender, 42 W. Va. 420; Singly v. Warren, 18 Wash. 434. (2) Inasmuch as the injunction in the Federal court did not and could not compel or direct the defendant, as complainant therein, to collect the rates or charges in excess of the maximum statutes involved, during the continuance of the injunction, such excess rates or charges so collected did not flow, nor constitute damages resulting from, the injunction as such, and the right to recover them is not destroyed by the existence of such injunction, nor limited by any bond that may have been given in connection therewith. St. Louis v. Gaslight Co., 70 Mo. 121; St. Louis v. Gaslight Co., 2 Mo. 349; New York v. Brown, 179 N. Y. 303; Lumber Co. v. Dardell, 84 Ark. 140; Haebler v. Meyers, 132 N. Y. 363; Railway & Electric Co. v. North Little Rock, 76 Ark. 48; Pulteney v. Warren, 6 Ves., Jr., 73; Railroad v. Railroad Commission, 196 Fed. 558; Railroad v. Taylor, 134 Ill. 603; Cummings v. Mugge, 94 Ill. 186; Wangelin v. Goe, 50 Ill. 450; Herrington v. Herrington, 11 Ill. App. 121; Vanzandt v. Mining Co., 2 McCr. 642; Starke v. Lewis, 23 Miss. 151; Landis v. Wolf, 206 Ill. 372; Shoe Factory v. Kaiser, 108 Ga. 767; Grant v. Grant, 3 Sim. 340; Anonymous, 2 Chan. Cas. 217; Hawkes v. Champion, Cary,

36; Dowche v. Perrot, Cary, 45; Hill v. Portman, Cary, 98; Sugg v. Thrasher, 30 Miss. 135; Work v. Harper, 31 Miss. 107; Marshall v. Minter, 43 Miss. 666; Tift v. Railroad, 159 Fed. 555; Tift v. Railroad, 123 Fed. 789; Tift v. Railroad, 138 Fed. 753; McGrew v. Railroad, 258 Mo. 23; McGrew v. Railroad, 230 Mo. 496; McGrew v. Railroad, 177 Mo. 533; Transportation Co. v. Sweetzer, 25 W. Va. 434; Keiserman v. Railroad, 63 Iowa, 732; Peters v. Railroad, 42 Ohio St. 275; Graham v. Railroad, 53 Wis. 473; Railroad v. Steiner, 61 Ala. 559; Railroad v. Barker, 210 Fed. 902; Coal & Coke Co. v. Conley, 67 W. Va. 129; Willcox v. Gas Co., 212 U. S. 19; United States ex rel. v. Delaware & Hudson Co., 213 U. S. 366; Reagan v. Loan & Trust Co., 154 U. S. 362. (3) The action for money had and received, or an action in the nature thereof, is broad enough and does permit a recovery by shippers and passengers and persons paying the excess charges, in any view that may be taken of the case. 2 Ency. Pl. & Pr. 1016; 2 Story's Eq. Jur. (13 Ed.), secs. 1255-6, pp. 604-5; Moses v. McFerlan, 2 Burr. 1005; Banking Co. v. Commission Co., 195 Mo. 262; Henderson v. Koenig, 192 Mo. 690; Harrison v. Lakeman, 189 Mo. 581; Johnson-Brinkman Co. v. Bank, 116 Mo. 558; Sanitary Co. v. Reed, 179 Mo. App. 164; Early v. Railroad, 167 Mo. App. 252; Paper Co. v. Publishing Co., 156 Mo. App. 187; Jenkins v. Clopton, 141 Mo. App. 74; Stout v. Hardware Co., 131 Mo. App. 520; Crigler v. Duncan, 121 Mo. App. 381; Harrison v. Murphy, 106 Mo. App. 465; Richardson v. Drug Co., 92 Mo. App. 515; Kelley v. Osborn, 86 Mo. App. 239; Deal v. Bank, 79 Mo. App. 262; Clark v. Bank, 57 Mo. App. 277; Coal Co. v. Slevin, 56 Mo. App. 111; Transportation Co. v. Sweetzer, 25 W. Va. 434; Peters v. Railroad, 42 Ohio St. 275. (4) The entire amount collected in excess of the statutory rates, during the pendency of the injunction in the Federal court, constitutes and creates a trust fund in the hands of the defendant railroad company, for which it

must account and pay to the beneficiaries thereof in this proceeding, or, in any event, that portion thereof that belongs to the State. 2 Story's Eq. Jur. (13 Ed.), sec. 1255; 3 Pom. Eq. Jur. 2007, secs. 1044, 1045, 1047, 1053; 39 Cyc. 179, 190; Loring v. St. Louis, 80 Mo. 461; Banking Co. v. Commission Co., 195 Mo. 262; York v. Bank, 105 Mo. App. 127; Clark v. Bank, 57 Mo. App. 277; Deal v. Bank, 79 Mo. App. 262; Harrison v. Murphy, 106 Mo. App. 465; Bunel v. Nest, 203 Mo. 429; Ward v. Sherman, 155 Cal. 287; Blair v. Turnpike, 67 Ky. 157; Commonwealth v. Scott, 112 Ky. 243; Tift v. Railroad, 138 Fed. 753; Tift v. Railroad, 159 Fed. 557; Barnes v. Thuet, 116 Iowa, 359; Bank v. Kimball, 1 S. D. 388; Newton v. Porter, 69 N. Y. 133; People v. Houghtaling, 7 Cal. 348; Thompson v. Thompson, 107 Ala. 163; Independent District v. King, 80 Iowa, 497; Plow Co. v. Lemp, 80 Iowa, 722; Smith v. Bank, 107 Iowa, 620; Bank v. Johnson, 51 Neb. 546; Chapman v. Douglas County, 107 U. S. 348; Aldrich v. Bank, 176 U. S. 618; United States v. Bank, 96 U. S. 301; Louisiana v. Wood, 102 U. S. 292; Parkersburg v. Brown, 106 U. S. 487; Read v. Plattmouth, 107 U. S. 568; Bank v. Townsend, 139 U. S. 67; Transportation Co. v. Pullman Car Co., 139 U. S. 24; Cotton Mills v. Mills, 147 Mass. 768; Perkins v. Boothly, 71 Me. 91; Blake v. Railroad, 19 Minn. 418; Morgan v. Louisiana, 93 U. S. 217; East, etc., Co. v. County, 102 U. S. 277; State v. Railroad, 66 Me. 512; Lawrence v. Railroad, 32 La. Ann. 427; State ex inf. v. Railroad, 176 Mo. 687; Rollins v. Mitchell, 52 Minn. 41; Kroll v. Coach, 45 Ore. 459; Moore v. Crawford, 130 U. S. 122; Parrish v. Parrish, 33 Ore. 486; Savage v. Johnson, 125 Ala. 673; Kent v. Dean, 128 Ala. 600; Savings & Loan Association v. Campbell, 43 L. R. A. 622; Angle v. Railroad, 151 U. S. 1; Morris v. Vyse, 154 Mich. 253; Boynton v. Miller, 144 Mo. 681; Hudson v. Wright, 204 Mo. 412; Couch v. Harp, 201 Mo. 457; Roughnelle v. Strode, 126 Mo. App. 348; Lightfoot v. Davis, 198 N. Y. 961; State v.

Railroad, 246 Ill. 188; Stock & Grain Exchange v. Bendinger, 109 Fed. 926; Bank v. Wakefield, 149 Cal. 558; Lakin v. Mining Co., 25 Fed. 337; Telephone Co. v. Telephone Co., 54 Fed. 50; Bourland v. County, 16 Ill. 538; Burnett v. Bank, 38 Mich. 630; People v. Bank, 96 N. Y. 32; Bank v. King, 57 Pa. St. 202; Bank v. Gas Co., 36 Minn. 75; Peak v. Elliott, 30 Kan. 156; Waterbury v. Barry, 130 N. Y. Supp. 517; Robertson v. Board, 84 Kan. 52; Parker v. Burwell, 68 Wash. 386; Schofield v. Baker, 212 Fed. 505; Druckfield v. Harris, 147 N. Y. Supp. 298; Finnegan v. McGuffog, 203 N. Y. 342; State ex rel. v. Williams, 221 Mo. 227. (5) The State has a right to sue for itself and all others similarly situated, for the reason, that this case falls within the rule that, when the question is one of common or general interest to numerous persons, and it is inconvenient or impracticable to bring them all before the court, one or more of such persons may sue for the benefit of all those similarly situated. Pom. Eq. Jur., sec. 269; Bliss on Code Plead. (3 Ed.), secs. 72, 73, 79; Story's Eq. Plead. (10 Ed.), secs. 97, 285; Breimeyer v. Bottling Co., 136 Mo. App. 84; Mitford's Chan. Plead (5 Ed.), p. 190; Smith v. Bank, 69 N. H. 254; Guffanti v. Surety Co., 196 N. Y. 452; Commonwealth v. Scott, 112 Ky. 596; Whaley v. Commonwealth, 110 Ky. 154; Insurance Co. v. Van Cleve, 191 N. Y. 410; Railroad v. Garrison, 81 Miss. 257; Crawford v. Railroad, 83 Miss. 708; Whitlock v. Railroad, 91 Miss. 779; Tift v. Railroad, 123 Fed. 790; Tift v. Railroad, 159 Fed. 555; Sang Lung v. Jackson, 85 Fed. 502; Insurance Co. v. Clunie, 88 Fed. 160; Chemical Co. v. Insurance Co., 113 Fed. 1; Osborne v. Railroad, 43 Fed. 824; Railroad v. Gibson, 85 Ga. 1; Bailey v. Tillinghast, 99 Fed. 801; Smith v. Swormdstedt, 16 How. 303; Whiting v. Industrial Assn., 61 N. Y. Supp. 27; Vann v. Hargett, 2 N. Car. 31; Phol v. Simpson, 74 N. Y. 137; Life Ins. Co. v. Beard, 80 Fed. 66; McKenzie v. L'Amoureux, 11 Barb. 519; Day v. Buckingham, 87

Wis. 215; Frederick v. Douglas County, 96 Wis. 411;
Water Works Co. v. Yeomens, 2 Chan. Cas. 8; Rail-
road v. Schuyler, 17 N. Y. 592; Board of Supervisors,
77 N. Y. 219; Bank v. Goddard, 131 N. Y. 494; Chase
v. Searls, 45 N. H. 511; Page v. Whidden, 59 N. H. 507;
Libby v. Morris, 142 Mass. 246; Farmington Vill. Cor.
v. Bank, 85 Me. 46; Harwarden v. Coal Co., 111 Wis.
545; Steel & Wire Co. v. Unions, 90 Fed. 596; Railroad
v. McConnell, 82 Fed. 598; McArthur v. Scott, 113 U.
S. 340; United States v. Old Settlers, 148 U. S. 427;
Hilton Bridge Co. v. Foster, 57 N. Y. Supp. 140;
Hodges v. Nalty, 104 Wis. 464; Specialty Co. v. Button
Co., 103 N. Y. Supp. 822; Telephone Co. v. Mfg. Assn.,
106 Ill. App. 54; Chicago v. Collins, 175 Ill. 445; Dor-
man v. Buckley, 119 Ill. App. 523; Wyman v. Bowman,
127 Fed. 257; Liggett v. Ladd, 17 Ore. 89; Carey v.
Hoxey, 11 Ga. 645; Stevenson v. Austin, 44 Miss. 474;
Hendrix v. Manley, 64 Ky. 30; Stevenson v. Lewis, 36
Vt. 91; West v. Randall, 1 Mason, 181; Surety Co. v.
Cement Co., 90 Fed. 25; People v. Field, 50 How. Pr.
481; Wheelock v. Church, 119 Cal. 477; Railroad v.
Swannell, 157 Ill. 616; Gas Co. v. San Francisco, 164
Fed. 884; Boyd v. Schneider, 131 Fed. 223; Shepard v.
Bank, 149 Ind. 542; Wallace v. Adams, 204 U. S. 415;
McIntosh v. Pittsburg, 112 Fed. 70; Bank v. Atkins,
22 Vt. 33; De Forest v. Thompson, 40 Fed. 375; United
States v. Railroad, 117 Fed. 544; Kellog v. Bank, 42
N. Y. Supp. 379; Carlton v. Newman, 77 Me. 408;
Keese v. Denver, 10 Colo. 113; Smith v. Dobbins, 87
Ga. 303.    (6)   The State of Missouri has adopted by
statute and practice the chancery rule applied in Eng-
land and in equity that, when the question involved is
of one common or general interest to many persons, or,
when the parties are numerous, and it is impracticable
or inconvenient to bring them all before the court, one
or more of them may sue or defend for the benefit of
all.   Authorites under Point 5; Sec. 8047, R. S. 1909;
8 Cyc. 373, 377, 378, 380, 382; Lilly v. Tobin, 103 Mo.

477; Newmeyer v. Railroad, 52 Mo. 81; Overall v. Ruenzie, 67 Mo. 203; Brandon v. Carter, 119 Mo. 572; Eddie v. Parke's Executor, 31 Mo. 513; Devine v. St. Louis, 257 Mo. 478; Sattig v. Small, 1 Kan. 170; Anonymous, 1 Chan Cas. 269; London v. Richmond, 2 Vern. 421; Vernon v. Blackberry, 2 Atk. 144; Chancey v. May, Prec. Ch. 592. (7) The petition clearly states a cause of action, and the court below committed manifest error in sustaining the demurrer thereto. 1 Cyc. 416, 418, 421, 427, 436; 16 Cyc. 89, 104; Hughes v. Woosley, 15 Mo. 492; Lime & Cement Co. v. Citizens Bank, 158 Mo. 272; Harrison v. Murphy, 106 Mo. App. 465; Crosby v. Bank, 107 Mo. 437; Ashby v. Winston, 26 Mo. 213; Northcraft v. Martin, 28 Mo. 469; Easley v. Prewitt, 37 Mo. 362; Saline County v. Sappington, 64 Mo. 371; Ancell v. City, 48 Mo. 80; Long v. Purdue, 83 Pa. St. 214; Hale v. Hale, 4 Humph. (Tenn.) 183; Lumber Co. v. Strother, 136 Fed. 295; Rippe v. Stodgill, 61 Wis. 38; Blodgett v. Foster, 114 Mich. 688; Mfg. Co. v. Hoffman, 168 Ill. 25; State v. Churchill, 48 Ark. 426; Warren v. Holbrook, 95 Mich. 185; Lightfoot v. Davis, 198 N. Y. 961; State v. Railroad, 246 Ill. 188; Lumber Co. v. Reynolds, 111 Cal. 588; West v. Brewster, 1 Duer (N. Y.), 647; Lunington v. Taft, 10 Barb. (N. Y.) 447; Williamson v. Warfield, 136 Ill. App. 168; Dodge v. Cole, 97 Ill. 338; Frederick County v. Frederick City, 88 Md. 654. (8) While we insist that there is nothing novel in the rights claimed, or in the procedure invoked, in this suit, and that precedents are not wanting therefor, yet, even if that were true, this suit should be sustained, even if there were not a single case in the reports similar in facts. Natural Gas Co. v. City, 160 Ind. 97; Joy v. St. Louis, 138 U. S. 1; People v. Tweed, 13 Abb. Pr. (N. S.) 73; In re Debbs, 158 U. S. 546; Railroad v. Conley, 67 W. Va. 129; Railroad v. McConnell, 82 Fed. 65; Railroad v. Pennsylvania Co., 54 Fed. 751; Dodge v. Cole, 97 Ill. 338; Smith v. Bank, 69 N. H. 254.

*Campbell Cummings, Bresnehen & West, Henry L. McCune, Ernest E. Watson* and *Clifford B. Allen, amici curiae,* representing certain shippers.

*Scarritt, Scarritt, Jones & Miller* for respondent.

(1) Neither the State, even though it may have a just demand for money against the defendant, nor the State *ex relatione* its Attorney-General, has, to say the least, any greater capacity, power or right than a private corporation or an individual, to collect for other claimants their demands, growing out of analogous or somewhat similar transactions, but who have not assigned their demands to it or expressly authorized it to make such collections. 4 Cyc. 1029; Commonwealth v. Railroad, 32 Ky. Law, 259; Fry v. State ex rel., 27 Ind. 348; State v. New London, 22 Conn. 163; State v. Welbes, 11 S. D. 86; State v. Bradish, 34 Vt. 423; State of Missouri v. State of Illinois, 200 U. S. 296, 202 U. S. 598; State ex rel. v. Board of Comrs., 101 Ind. 69; State ex rel. v. Lord, 28 Ore. 498. (2) It is not the business of the State, nor has it the right or authority, to maintain a suit to collect the claims or demands which it alone, and not the alleged creditor, asserts to be due and owing, not to itself but to the alleged creditor, from the defendant, and to which claims or demands it asserts no beneficial interest or right. Kraft-Holmes Gro. Co. v. Crow, 36 Mo. App. 288; State ex rel. v. Hawes, 177 Mo. 360; Express Co. v. St. Ry. Co., 126 Mo. App. 471; Met St. Ry. Co. v. Express Co., 145 Mo. App. 371; State ex rel. v. Beasley, 57 Mo. App. 570; People v. Railroad, 57 N. Y. 161; People v. Booth, 32 N. Y. 397; State ex rel. v. Railroad, 176 Mo. 687; St. Louis v. Anderson, 229 Mo. 181; Oklahoma v. Railroad, 220 U. S. 277, 286; State v. Elec. Ry. & L. Co., 136 Wis. 179; State v. Gorman, 171 Ind. 58. (3) The amount of all the excess charges alleged to have been collected

265Mo.42

by the defendant from the various shippers and passengers does not constitute. a trust fund in the possession of the defendant to be impounded and disbursed amongst the owners of the several alleged causes of action upon the suit of one or more of the parties who have paid like excess rates. The most that can be claimed under the allegations of the petition is that each party who claims to have paid more for the stated service than he should have paid has the right to. institute a common-law action to recover as for money had and received. Mfg. Co. v. Easton, 120 Fed. 440; Pierce v. Pierce, 55 Mich. 29; Noe v. Roll, 134 Ind. 115; Yuster v. Keefe, 46 Ind. App. 460; Furber v. Dane, 204 Mass. 412; Farrell v. Wallace, 161 Iowa, 528. (4) There is no equity in plaintiff's petition. In other words, this is not a suit in equity. State ex rel. v. Williams, 221 Mo. 227; United States v. Development Co., 200 U. S. 451; Equitable Life Assurance Soc. v. Brown, 213 U. S. 25; Mechanics Ins. Co. v. Distilling Co., 173 Fed. 891; Watson v. Huntington, 215 Fed. 472; Peniston v. Brick Co., 234 Mo. 711; Tribette v. Railroad, 70 Miss. 182; Coal Co. v. Lawson, 43 Ind. App. 226; Brett on Equity, sec. 543; Pomeroy, Equity Jurisprudence, sec. 251½; Storrs v. Pensacola Ry., 29 Fla. 634; Van Auker v. Dammdier, 27 Ore. 150; Bliss, Code Pleadings (3 Ed.), sec. 76; High on Injunctions (3 Ed.), sec. 65; Thompson v. Craig, 93 Fed. 85; Keary v. Mutual Reserve, 30 Fed. 359; Vogelsong v. Wood Fibre P. Co., 147 Mo. App. 578; Grubb's Appeal, 96 Pa. 228; Mfg. Co. v. Easton, 120 Fed. 440; Turner v. Mobile, 135 Ala. 73; Steel Co. v. Hopkins, 174 Ala. 465; Telephone Co. v. Williamson, 101 Miss. 1; Illinois Central v. Baker, 155 Ky. 512. (5) The petition seeks to recover for excess rates paid by it for carrying alleged passengers and freight and also excess rates paid by other parties for carrying other passengers and other freight; and it prays judgment for these amounts either in its own name or those of the several claim-

.ants: It therefore clearly appears that if the suit is one in equity the petition or bill is multifarious, and if it be one at law several causes of action are improperly united. The demurrer therefore was well grounded. 14 Ency. Pl. & Pr., p. 197; 16 Cyc. 241; Chaput v. Block, 224 Mo. 73; Fletcher's Equity Plead. & Prac., secs. 107, 108, 111; Story, Equity Procedure (10 Ed.), sec. 279; Clark v. Covenant Mutual L. I. Co., 52 Mo. 272; Stalcup v. Garner, 26 Mo. 72; McGlothlin v. Hemery, 44 Mo. 355; Pattison, Missouri Code Pleading, sec. 275; Alexander v. Warrance, 17 Mo. 228; McQueen v. Choteau, 20 Mo. 229; Doan v. Holly, 25 Mo. 357; Gardner v. Robertson, 208 Mo. 605; Sutton v. Casseleggi, 77 Mo. 397. (6) In seeking to recover excess rates paid under the freight rate statutes of 1905 and also under the freight rate statutes of 1907, and under the passenger rate statute of 1907, each being separate enactments, the validity of each of which can legitimately and separately be called in question, it is submitted that several causes of action have been improperly united in this one suit and count, and that the demurrer on that ground was well sustained. R. S. 1909, sec. 1795; Henderson v. Dickey, 50 Mo. 161; State ex rel. v. Tittman, 103 Mo. 553. (7) Because of the decrees of the Federal court the statutes pleaded fixing maximum tariffs for passengers and freight did not become effective and were not put in force and effect during the period in which the excessive charges are alleged to have been made, and the defendant was under no duty to conform to those tariffs; and so plaintiff has no cause of action either in law or in equity. State ex rel. v. Williams, 221 Mo. 227; R. S. 1909, secs. 3187, 3180-3185; Kansas City v. Gas Co., 254 Mo. 515; Public Service Commission Act, secs. 29, 30, 36, 42; Adams v. Lindell, 5 Mo. App. 197; Simpson v. McGonegal, 52 Mo. App. 540; Perkins v. Fielding, 119 Mo. 149; Hilgert v. Asphalt Co., 107 Mo. App. 385. (8) During the entire period within which the alleged excessive

tariffs were exacted the pleaded statutes relative to such tariffs were by decrees of the Federal court adjudged to be inoperative, ineffective, unconstitutional and void. Those decrees during that entire period remained unreversed, unimpeached and in full force, and binding and effective upon the plaintiff and defendant, for the Attorney-General and other officials of the State as well as the defendant were parties thereto. No *supersedeas* from those decrees of the chancellor was prayed for or allowed. During that period the statutes were not *de facto* in effect. And the tariff schedules were never made up or published. If any loss occurred to the plaintiff by reason of the fact that those statutes were unenforced, or were not carried into effect, it was a loss occasioned by the operation of a legitimate governmental function and is *damnum absque injuria*. St. Louis v. Gas Light Co., 82 Mo. 349; State ex rel. v. Williams, 221 Mo. 264; Campbell v. Carroll, 35 Mo. App. 640; Keber v. Bank, 4 Mo. App. 195; Bank v. Bank, 4 Mo. App. 505; Russell v. Farley, 105 U. S. 433; Meyers v. Block, 120 U. S. 206; Houghton v. Cortelyou, 208 U. S. 149; United States v. Pub. Co., 160 Fed. 989; Scheck v. Kelly, 95 Fed. 941; Wollfolk v. Jones, 216 Fed. 810; Land & M. Co. v. Tarwater, 126 Tenn. 601; Palmer v. Foley, 71 N. Y. 106; Rogers v. Clough, 76 N. H. 272; Kay v. Glade Creek R. C. Co., 47 W. Va. 725; Loom Co. v. Wilson, 198 Mass. 182; Batson v. Water Co., 73 S. C. 368; Asevado v. Orr, 100 Cal. 293. (9) The petition is large in its declarations of legal conclusions but it does not state sufficient specific issuable facts to constitute a cause of action at law or in equity. This is not a suit upon an injunction bond or other express obligation to recompense plaintiff or any one else. R. S. 1909, sec. 1832; Huston v. Tyler, 140 Mo. 264; Mangelsdorf v. Seed Co., 132 Mo. 507; Whitewater Co. v. Devore, 130 Mo. 339; Coombs Co. v. Block, 130 Mo. 668. (10) The decrees granting injunctive relief are the decrees of

the Federal court and the law of that jurisdiction is well established "that where no bond or undertaking has been required the court has no power to allow damages sustained by either party in consequence of the litigation." The effect of those decrees and of the injunction is to be determined by the doctrines of Federal jurisprudence which we expressly invoke, and under the law of that jurisdiction the alleged wrongs are *damnum absque injuria.* Live Stock Co. v. Slaughter House Co., 120 U. S. 141; Tullock v. Mulvane, 184 U. S. 497; In re Johnson, 46 Fed. 477; Bein v. Heath, 12 How. (U. S.) 178; Cooke v. Avery, 147 U. S. 375; Bank v. Society for Savings, 80 Fed. 581; Cornue v. Ingersol, 171 Fed. 666; Bock v. Perkins, 139 U. S. 628; Hurst v. Cooke, 61 Fed. 1; Chemical Co. v. Chemical Co., 175 Fed. 995; Ma-Ka-Ta-Wah-Qua-Twa v. Rebok, 111 Fed. 12.

*J. L. Minnis,* General Solicitor, Wabash Railroad Co.; *W. F. Evans,* General Solicitor, St. L. & S. F. R. R. Co.; *E. T. Miller,* General Attorney, St. L. & S. F. R. R. Co.; *S. W. Moore,* General Solicitor, K. C. So. Ry. Co.; *M. L. Bell,* General Solicitor, Rock Island Lines; *Paul Walker,* General Attorney, Rock Island Lines; *S. H. West,* General Solicitor, St. L. S. W. Ry. Co.; *R. A. Brown,* General Counsel, St. J. & G. I. R. R. Co.; *Gardiner Lathrop,* General Solicitor, A., T. & S. F. Ry. Co.; *T. R. Morrow,* Solicitor, A., T. & S. F. Ry. Co.; *J. M. Bryson,* General Counsel, M. K. & T. Ry. Co.; *J. W. Jamison,* General Attorney, M., K. & T. Ry. Co.; *O. M. Spencer,* General Solicitor, C., B. & Q. R. R. Co.; *J. F. Green,* General Attorney, The Missouri Pacific and St. L., I. M. & S. Ry. Cos., and *Edw. J. White,* General Solicitor, The Missouri Pacific and St. L., I. M. & S. Ry. Cos., *amici curiae.*

GRAVES, J.—In this case the defendant filed a demurrer to plaintiff's petition, which was sustained, and plaintiff refusing to plead further judgment was

entered up for defendant and against plaintiff. The soundness of that judgment is the issue here. Plaintiff's petition is peculiarly worded, and the case may have to turn upon that wording, and for such reason we deem it best to set out the petition in full. The petition reads:

"Plaintiff, the State of Missouri, for its second amended petition, voluntarily made, leave of court having been first obtained therefor, states that it brings this action at the relation of John T. Barker, Attorney-General of the State of Missouri, and relator states that, on the 6th day of November, 1912, he was duly elected Attorney-General of the State of Missouri, and has since qualified, and is now acting as said Attorney-General of said State of Missouri, and states that the State of Missouri brings this action for itself, and for all other persons similarly situated, and who are hereby invited to enter herein and become parties hereto.

"Plaintiff further states that the defendant is now, and was at all the times hereinafter mentioned, a railroad corporation, duly organized and existing under and by virtue of the laws of the State of Illinois, with authority to sue and liable to be sued as such in the courts of this State, and that said defendant is in possession of and operating a line of railroad from Kansas City, Missouri, to St. Louis, Missouri, which said railroad passes, among others, through the county of Saline, in said State of Missouri.

"Plaintiff further states that, in the year 1905, the General Assembly of the State of Missouri passed and enacted acts commonly known and designated as the maximum freight rate laws, to-wit, the Act of the General Assembly, approved April 15, 1905, entitled 'An Act, entitled "An act to amend chapter 12 of the Revised Statutes of Missouri, revision of 1899, entitled 'Corporations, Private,' by repealing section 1194 of said Revised Statutes, being part of article 4 of said

chapter concerning railroad classification-charges-commissioners, and to enact in lieu thereof the following sections providing for the regulation of freight charges by railroads and the recovery of penalties for the violation thereof,'' ' and the Act of the General Assembly, approved April 14, 1905, entitled 'AN ACT to amend Article 4, chapter 12 of the Revised Statutes of Missouri of 1899, entitled, ''Railroad classification charges, commissioners,'' by adding a new section thereto to be known as section 1195a.' Said acts fixing and establishing the maximum rates or charges that could thereafter be lawfully made, charged, collected and received by defendant and other railroads for carrying and transporting freight of the kinds and classes therein specified from points within the State of Missouri to other points therein, which said acts became operative and in effect on the 16th day of June, 1905; that, thereafter, the General Assembly of the State of Missouri repealed said acts aforesaid, and passed and enacted in lieu thereof, and thus modified the same, the act approved March 19, 1907, entitled 'AN ACT to repeal an act of the 43rd General Assembly, approved April 15, 1905, entitled ''An act to amend chapter 12 of the Revised Statutes of Missouri, Revision of 1899, entitled 'Corporations, private,' by repealing section 1194 of said Revised Statutes, being part of article 4 of said chapter, concerning railroad classification, charges, commissioners, and to enact in lieu thereof the following new section providing for the regulation of freight charges by railroads and recovering penalties for the violation thereof,'' and to repeal an act of the 43rd General Assembly, approved April 14, 1905, entitled ''An act to amend article 4, chapter 12, of the Revised Statutes of Missouri, 1899, entitled 'Railroad classification, charges, commissioners,' by adding a new section thereto, to be known as section 1195a, fixing the charges for carrying undressed stone, crushed rock and building or paving

brick," and to enact in lieu thereof certain new sections, to be known as sections 1194, 1194a-1, 1194b-1, and 1194c-1, providing for the regulation of freight charges by railroads and prescribing punishment for a violation thereof, which new sections shall read as follows,' and also the act approved March 19, 1907, entitled 'AN ACT to amend article 4, chapter 12, Revised Statutes of Missouri of 1899 by adding a new section thereto, to be known as section 1195a, and relating to freight charges and classification,'·which said acts became operative and in effect on the 14th day of June, 1907, fixing and establishing the maximum freight rates and charges that could thereafter be lawfully made, charged, collected and received by the defendant and other railroads carrying and transporting the kinds and classes of freight therein specified; that the said General Assembly of Missouri also passed and enacted, in the year 1907, the act approved February 27, 1907, entitled 'AN ACT to repeal sections 1191 and 1192 of chapter 12, article 4, Revised Statutes of Missouri 1899, entitled "Railroad classification-charges-commissioners," by striking out sections 1191 and 1192 and enacting the following sections in lieu thereof to be known as sections 1191 and 1192 and 1192a,' fixing and establishing the maximum rates of fares that could thereafter be lawfully made, charged, collected and received by the defendant and other railroads carrying and transporting passengers from points within the State of Missouri to other points therein, which said rates or fares permitted and allowed to be so made, charged, collected and received by the defendant became and were at the rate of two cents per mile for persons over twelve years of age; and one-half thereof for persons twelve years of age and under; that said maximum freight and passenger rate laws provided for reduced freight and passenger rates, respectively from what the defendant and other railroads prior thereto had been permitted to charge, and were

charging, for freight and passengers carried and transported by the defendant from points within the State of Missouri to other points therein, or what is commonly known and designated as intrastate business or transportation; that, on the 16th day of June, 1905, an injunction was issued out of and by the Circuit Court of the United States for the Western Division of the Western District of Missouri, sitting at Kansas City, Missouri, enjoining the operation and enforcement of the said maximum freight rate laws of 1905; that, thereafter, and on the 13th day of June, 1907, in the said same suit, by supplementary proceedings therein, and as a part thereof, said injunction theretofore granted and subsisting was amended and enlarged so as to enjoin the said maximum freight rate laws of 1907, and also the operation and enforcement of said maximum passenger rate laws were in said same suit, by supplementary proceedings therein, and as a part thereof, enjoined from the 13th day of June, 1907, until the 19th day of June, 1907, but were not further enjoined thereafter until the 8th day of March, 1909, and said defendant complied therewith, and did not charge passenger rates or fares in excess thereof until May 1, 1909; that, thereafter, on the 8th day of March, 1909, the injunction and amendments thereto having been continued in force and effect until said date, said Federal court rendered a final decree in said suit, and undertook to permanently enjoin the operation and enforcement of said maximum freight and passenger rate laws aforesaid, and, from the dates hereinbefore stated, the operation and enforcement of said maximum freight and passenger rate laws were enjoined until the reversal of said decree by the Supreme Court of the United States, as hereinafter more particularly stated, and, during the times hereinbefore and hereinafter mentioned, defendant herein, as well as the other railroads owning or operating lines of railroad within this State, refused to put into operation and effect

said reduced freight and passenger rates, as required by said maximum freight and passenger rate laws, but continued to unlawfully make, charge, collect and receive the rates and fares enacted before the passage and going into effect of said laws, except that, from June 14, 1907, until May, 1909, defendant charged, collected and received two cents per mile, in compliance with said maximum passenger rate laws, and from and after the 1st day of May, 1909, until the 2nd day of July, 1913, the defendant unlawfully charged, collected and received from the plaintiff and all passengers traveling over its lines in the State of Missouri, and all persons paying fares therefor, as aforesaid, the rate of two and one-half cents per mile for such passengers, and which said freight rates and charges and passenger rates and fares were in excess and higher than the said freight and passenger rates as fixed and established by said laws aforesaid, and plaintiff and all shippers and passengers shipping over and traveling upon defendant's said lines, and all persons paying freight rates and passenger fares therefor, were compelled to and did pay such excessive and unlawful excess freight rates or charges and passenger rates or fares, as hereinafter more particularly stated.

"Relator further states that, at the time of granting said injunction by the said Federal court, Herbert S. Hadley was the Attorney-General of the State of Missouri, and as such Attorney-General was made, and by the act of said defendant became and was, the representative of all shippers and passengers shipping and traveling upon defendant's lines or railroad from points within the State of Missouri to other points therein, and paying freight charges and passenger fares therefor, and as such Attorney-General was enjoined from enforcing any of the provisions of said maximum freight and passenger laws, and by virtue of said injunction against said Herbert S. Hadley, Attorney-General of said State of Missouri, who was then

and there made, and by the act of said defendant be-
came and was, the representative of all such passen-
gers and shippers, such persons paying said freight
charges or passenger fares  were enjoined and pre-
vented by said injunction, by and through their said
representative, Herbert S. Hadley, Attorney-General
of the State of Missouri, and, while so enjoined by
virtue of said injunction against their said represen-
tative, as aforesaid, were so enjoined and prohibited,
from instituting and maintaining suits against the de-
fendant for the recovery of such excess freight rates
or charges and passenger rates or fares, and the de-
fendant herein refused to put such reduced or lower
freight rates and passenger rates into effect, and to
comply with said maximum freight and passenger rate
laws, but unlawfully compelled the plaintiff and all
shippers and passengers shipping or traveling upon
its said lines of railroad within the State of Missouri,
as aforesaid, and all persons paying said freight rates
and passenger fares, as aforesaid, to pay such exces-
sive and unlawful freight rates and charges and pas-
senger rates and fares; that, thereafter, Elliot W.
Major succeeded said Herbert S. Hadley as Attorney-
General of the State of Missouri, and said injunction
was, at the request of the defendant, amended so as to
enjoin said Elliot W. Major as such Attorney-General
and he thereupon became and was the representative
of all shippers and passengers, and persons paying
such excessive and unlawful freight charges and pas-
senger fares, the same as said Herbert S. Hadley had
been, as aforesaid; that, thereafter, John T. Barker
succeeded said Elliot W. Major as Attorney-General
of the State of Missouri, and is now acting as such At-
torney-General, and by reason of succeeding said El-
liot W. Major to said office was substituted for said
Herbert S. Hadley and Elliot W. Major, and said in-
junction was thereupon amended so as to enjoin said
John T. Barker, Attorney-General, and he was then

and there made, and has ever since been therein, the representative of all such shippers and passengers,. and persons paying such excessive and unlawful freight charges and passenger fares, the same as his said predecessors in said office of Attorney-General had been, as aforesaid.

"Relator further states that, after the granting and allowing of said injunction, as aforesaid, the State of Missouri, through its Attorney-General, and the shippers and passengers, and persons paying said unlawful and excessive freight charges and passenger fares, as aforesaid, through their representative, prosecuted an appeal to the Supreme Court of the United States, and that, on the 16th day of June, 1913, the said Supreme Court reversed and for naught held the said decree of said Federal court granting and allowing said injunction in behalf of the defendant herein, and ordered said injunction dissolved and defendants bill therefor dismissed, without prejudice, and held that said maximum freight rate laws and said maximum passenger rate laws were and are valid and had been in effect since the time they became operative and in effect under the Constitution and laws of the State of Missouri, and found all the issues in said suit in favor of the State of Missouri, and said shippers and passengers, and persons paying said excess charges and fares, as aforesaid; that, thereafter said injunction was dissolved, and the defendant's bill therefor dismissed, and the Federal Court aforesaid refused, and has since refused, to retain jurisdiction of said matter, but has left the question of jurisdiction for the State courts, and on the 2nd day of July, 1913, the defendant herein filed and published and put into effect, its schedules and tariffs, as required by said maximum passenger rate law, and, on the 12th day of July, 1913, filed and published, and put into effect, its schedules and tariffs, as required by said maximum freight rate law, and, at the times hereinbefore stated, respectively,

ceased to unlawfully make, charge, collect and receive passenger fares and rates and freight charges and rates in excess thereof.

"Relator further states that, from said May 1, 1909, until said July 2, 1913, during the time said injunction was in force and effect preventing the operating and enforcement of said maximum passenger rate laws, the plaintiff was compelled to and did pay the railroad fares of its officers, agents and employees, while traveling upon the business and affairs of said State of Missouri, over the lines of railroad of the defendant herein, from points within the State of Missouri to other points therein, and during said time was compelled to and did pay to the said defendant, in excess passenger fares, the sum of fifty thousand dollars, and the State of Missouri is entitled to and should recover said excess passenger fares so paid from the defendant herein; that the defendant herein charged, collected and received said money without authority of law, and holds the same in violation of its corporate rights and powers as a common carrier in the State of Missouri, and has no title in and to said unlawful, exorbitant and excessive passenger fares and rates so collected, and had and received all and every part thereof for the use and benefit of the State of Missouri, plaintiff herein, and all of said money aforesaid belongs to the plaintiff, from which it was wrongfully and unlawfully taken, and wrongfully and unlawfully retained by defendant, and withheld from plaintiff, and, on said 2d day of July, 1913, when said defendant ceased to unlawfully charge, collect and receive said excess passenger fares aforesaid, said defendant was, and now is, indebted to the State of Missouri, the plaintiff herein, in said sum of fifty thousand dollars, for so much money had and received for the use of the State of Missouri, plaintiff herein.

"Relator further states that the State of Missouri, plaintiff herein, during the continuance of said

injunction aforesaid, and until the 12th day of July, 1913, was compelled to and did pay to the defendant excess freight rates and charges for transportation of its freight from various points within the State of Missouri to the State institutions of said State of Missouri, such as the University of said State, located at Columbia, Missouri, and the Penitentiary, located at Jefferson City, Missouri, and its eleemosynary and educational and other institutions located at divers other points, therein, belonging to and sustained by said State of Missouri.

"Relator further states, that, on or about the —— day of February, 1911, a fire caused the destruction of such records as were in the possession of the plaintiff, showing such shipments and charges aforesaid, and the plaintiff is not now in possession of any record thereof, is unable to state the amount of excess freight rates and charges charged, collected and received by defendant thereon, but that the defendant has a full and complete record thereof, and all the facts pertaining thereto are peculiarly within the knowledge of said defendant, and that said items and charges extended over a period of more than seven years, and are very numerous and complicated, and can be ascertained only by taking an accounting and having discovery thereof; that the defendant herein charged, collected and received said excess freight charges without any warrant or authority of law, and holds the same in violation of its corporate rights and powers as a common carrier in the State of Missouri, and has no title in and to said unlawful, excessive and exorbitant charges so collected, and had and received all and every part thereof to and for the use and benefit of the State of Missouri, plaintiff herein, and all of the money and said excess freight rates or charges and each and every part thereof belongs to the plaintiff, from which the same was wrongfully and unlawfully taken, and wrongfully and unlawfully retained by the defendant, and

withheld from plaintiff, and that, on the 12th day of July, 1913, when said defendant ceased to unlawfully charge, collect and receive said excess freight rates or charges, as aforesaid, said defendant was and now is, indebted in the sum of money, and each and every part thereof, so collected and exacted from plaintiff as such excess freight rates or charges for so much money had and received by said defendant to and for the use of said State of Missouri.

"Plaintiff further states that, during the times hereinbefore stated, all the shippers and passengers, shipping and traveling over the lines of railroad of defendant from points within the State of Missouri to other points therein, and persons paying charges and fares therefor, the number of which is unknown to plaintiff, but runs into the thousands and hundreds of thousands, were likewise, and by the same identical and continuous unlawful act or acts of defendant, compelled to and did pay to the defendant said excessive freight rates or charges and said excess passenger rates or fares, and are likewise entitled to recover from the defendant such unlawful, exorbitant and excessive rates or charges, and that each and every one of them has the right to maintain an action against the defendant therefor; that the number of said shippers and passengers, and persons so paying said rates, charges or fares, are very numerous and in the same class as plaintiff, and their claims therefor likewise numerous, and that each and all of them are in the same situation as, or similarly situated with, the plaintiff in this suit; that there is a community of interests between all such shippers, passengers and persons so paying said excess rates, charges or fares and the State of Missouri, and that all said parties are united by a common tie, and have an identity of interest in the subject-matter of this suit; and are directly interested in the result or results to be obtained in this suit; that precisely the same questions of law and fact are in-

volved herein between the plaintiff herein, said ship-pers and passengers and said persons so paying said excess freight and passenger rates, charges and fares, and each and every one of them, on the one side, and the defendant on the other side; that the underlying questions of law and fact in this suit, and all said ship-pers and passengers and persons so paying said excess rates, charges and fares aforesaid, being the same up-on which all must recover against the defendant, or be defeated in recovery, are of one common or general interest to numerous persons, and it is impracticable to bring them all before the court; that there will be filed against the defendant a vast number of separate suits against the defendant, unless plaintiff shall pros-ecute, and be permitted to prosecute, this suit, and that all questions, which would be involved in said suits, de-pend upon the same issues of fact and upon the same principles of law, and all can be settled in one suit and by one adjudication, and in this suit brought by plain-tiff herein, and a great multiplicity of suits can and will thereby be avoided, court costs reduced, and per-sons with small claims will have an opportunity to have them adjudicated, which they otherwise would not be able to have done.

"Wherefore, plaintiff prays judgment against the the defendant for the said sum of fifty thousand dol-lars, aforesaid, and for an accounting and discovery against the defendant herein as to said excess freight charges, and as to said excess passenger fares, so that it may be ascertained the exact amount of money so unlawfully taken and exacted from the State of Mis-souri, plaintiff herein, and all other shippers and pas-sengers similarly situated, and had and received to and for its and their use by defendant as aforesaid, and prays that a referee be appointed for the purpose of securing said accounting, and discovery of the items and amounts thereof, and that judgment be rendered against the defendant herein for the amount so as-

certained to have been illegally and unlawfully charged and collected from plaintiff by defendant, and for judgment for said plaintiff, the State of Missouri, for the amount so ascertained, and that all persons and claimants similarly situated be permitted to come in and file their claims herein, and become parties hereto, and, when they so come in, that they shall have the same orders, judgments and decrees as prayed for by the plaintiff, and for all other orders, decrees and judgments as to the court shall seem meet and proper."

To this petition the following demurrer was filed:

"Comes now the defendant and demurs to plaintiff's second amended petition in this cause for the following reasons, to-wit:

"1. Because the petition does not state facts sufficient to constitute a cause of action against this defendant.

"2. Because plaintiff has in said petition attempted to bring before the court alleged claims and alleged causes of action of other persons which cannot be legally joined in this suit, and are improperly united; and said petition is multifarious.

"3. Because plaintiff, in said petition, has improperly united alleged claims or alleged causes of action of persons not named as parties plaintiff to said suit.

"4. Because said petition is clearly multifarious.

"5. Because plaintiff, State of Missouri at the relation of John T. Barker, Attorney-General, has no legal capacity or right to maintain this suit for or on behalf of any shippers and passengers in any capacity whatever.

"6. Because this court has no jurisdiction of the subject of the action or of the alleged claims or alleged causes of action of shippers and passengers referred to in the petition, or of the alleged shippers and passengers.

265Mo.43

"7.   Because there is a defect of parties plaintiff, and plaintiff is not the real party in interest.

"8.   Because plaintiff has not the legal capacity or right or authority in law to sue or maintain this suit against defendant.

"9.   Because there is a misjoinder of alleged causes of action which cannot be joined in the same count or in the same petition.

"10.   Because, the petition, upon its face, discloses no equity so as to give this court, as a court of equity, jurisdiction to grant the relief prayed in said petition, or the appointment of a referee for the purpose of an accounting.

"11.   Because the petition does not state whether or not an injunction bond was given or executed in the injunction suit referred to in the petition filed in the Circuit Court of the United States for the Western Division of the Western District of Missouri, sitting at Kansas City, Missouri; and, in the absence of an injunction bond, no recovery can be had by reason of any damages or claims caused by or growing out of the issuance of said injunction, and in any event no recovery can be had in the absence of a bond covering the matters complained of in the petition.

"12.   Because at the time of issuing the alleged injunction by the said Federal court referred to in the petition, an injunction bond was executed and issued and filed in said Federal court and approved by said court, which bond is in words and figures, as follows, to-wit:

"IN THE CIRCUIT COURT OF THE UNITED STATES FOR
"THE WESTERN DIVISION OF THE WESTERN
"DISTRICT OF MISSOURI.

"THE CHICAGO & ALTON RAILROAD COMPANY,
    Complainant,

        v.

"HERBERT S. HADLEY, Attorney-General,
Joseph Rice, John A. Knott and Frank W. Wightman,
Railroad Commissioners, et al., Defendants.

"INJUNCTION BOND.

"Know all men by these presents: That the above complainant is held and firmly bound to the above-named defendants in the penal sum of ten thousand dollars, for the payment of which it binds itself, its executors, administrators, successors and assigns. This bond is made upon the condition.

"Whereas, the court in the above-entitled cause made an order on July 12, 1905, granting a temporary injunction; now if said obligor pays, in case said injunction be dissolved, all damages ascertained herein to have been sustained by defendants, or any of them, or any person becoming a defendant herein, then this obligation to be void; otherwise in full force and effect.

"Witness the hand and seal of said party this —— day of July, 1905.

"THE CHICAGO & ALTON RAILROAD COMPANY,

"By S. M. FELTON, Its President.

"Attest: CHARLES H. DAVIS, Secretary.

"The foregoing bond is approved this 22nd day of July, 1905, the appearing defendants waiving the necessity of any surety signing the bond.

"ADELAIDE UTTER, Clerk.

"That any recovery for the matters complained of in plaintiff's petition is limited to said bond, above set forth, and that no recovery can be had for any of the matters complained of in plaintiff's petition except in an action upon said bond, which bond plaintiff, through its counsel, has admitted was given and executed and approved by the court which issued the injunction alleged in the petition.

"13. Because the United States District Court for the Western Division of the Western District of Missouri alone has jurisdiction of all alleged damages or claims of the State of Missouri and of shippers and passengers for and on account of the alleged overcharges, and that the same are limited by said bond.

"14. Because the alleged statutes of the State of Missouri referred to in the petition are confiscatory, and enforcement of the same would amount to a depriving of defendant of its property without compensation, without due process of law or the equal protection of the law, contrary to section 1, article 14, of

the Amendments to the Constitution of the United States.

"Wherefore, defendant prays the judgment of the court."

Other questions will be further outlined in the course of the opinion.

I. Some acrimony has seemingly crept into this case. The briefs are voluminous, and in some instances cite a great number of cases many of which fall far short of the conceived point, and at times the conception is not even clear. It is a case, however, where the court should winnow the wheat (if any) from the chaff; where the bark should be separated from the solid wood; where principles of substantial law should be separated from all vagaries. It is in other words a typical case for the application of seasoned doctrines of law. The doctrines of the theorist have no place in a case where either life, limb or property is at stake, and it makes no difference from which side of economic or political questions the theorist may come. We have theorists who imagine large interests are the only things to be observed, and then we have theorists that imagine that property rights should be swept aside by popular clamor, much of which clamor is of their own creation. Both are alike dangerous to society and the true administration of the law. Such views have no place in briefs for the courts. Questions of law which are at issue are the only things in which the courts are interested and harangues in which popular prejudice is sought have no place here. Some briefs in this case amply justify these remarks. We shall not be personal (and therefore designate no briefs), but the one upon which the shoe fits will recognize the justness of these observations. We pass now to the merits of this cause.

II.  We have set out the petition in full for a pur-
pose.  At one time it appeared that there might be a
question as to whether or not the learned Attorney-
General was suing for the State, or
whether he was suing for both the State
and all passenger and freight shippers.
In fact distinguished counsel privately employed by
the State had suggested in oral argument that the court
could, if it took a certain view of the law, strike from
the petition certain allegations of the petition, as sur-
plusage, and leave a petition which would state a good
cause of action against the defendant and in favor of
the State only.  To my mind the suggestion struck with
some force at the time.  Later, however, a reading of
the petition did not bear out the suggestion.  But we
need not necessarily resort to a reading of the petition
for its construction.  In the reply brief filed, the learned
Attorney-General, despite the suggestion aforesaid,
has seen fit to fully characterize his petition.  As he
stands sponsor for the petition and this case, his inter-
pretation of the petition should go far with the court.
This on the theory that one should be bound by his own
admissions.  His admission that this suit was brought
for the shippers and passengers of Missouri is couched
in this language:

"The last brief upon behalf of the railroad has
been filed.  This will be the last word said for more
than one hundred thousand shippers and passengers,
whose money has been wrongfully taken from them.

"The 'Swan Song' of the railroad is a last at-
tempt to vilify the Attorney-General for his efforts to
recover for the people their money.

"In their madness they cannot conceive of an At-
torney-General who stands for the people.  Had the At-
torney-General represented them with one-half the zeal
he represents the people, he would have been a great
man, great enough as a lawyer to occupy a seat upon
the bench of the Supreme Court of the United States—

*Petition
Construed.*

great enough as a man to occupy the Presidential chair—but, in insisting on representing the people, as is his duty, he becomes an undesirable citizen, a crusader, and one who foolishly regards his oath of office seriously.''

The learned Attorney-General thus clearly admits that the purpose of his suit (and therefore the gist of his petition) is to recover not only for the State, but for ''more than one hundred thousand shippers and passengers'' the excess which was paid by the State and these ''more than one hundred thousand shippers and passengers'' in passenger and shipping rates. On page three of the original brief the learned Attorney-General, thus further says:

''The State also, in connection with its own cause of action, seeks to prosecute the suit in behalf of all other shippers and passengers, who were compelled to pay like excess charges, and who, therefore, are similarly situated with the State.''

Having characterized this petition himself he is estopped from saying that the court should otherwise name such petition, if his admission lead into trouble under the demurrer. Not only do we have this solemn admission, but many others of a like character throughout the several briefs filed by the appellants. We would therefore be perfectly safe in assuming the petition to be as the drafter thereof admits it to be.

But we need not rest upon these admissions alone. The petition proceeds upon the theory that the Attorney-General represents the shippers and passengers. It has been said that the prayer of a petition is no part of the petition, but the prayer of a petition is a clear index to the construction placed upon the petition by the pleader. A portion of the prayer in this case reads:

''Wherefore, plaintiff prays judgment against the defendant for the said sum of fifty thousand dollars, aforesaid, and for an accounting and discovery against

the defendant herein as to said excess freight charges, and as to said excess passenger fares, so that it may be ascertained the exact amount of money so unlawfully taken and exacted from the State of Missouri, plaintiff herein, *and all other shippers and passengers similarly situated, and had and received to and for its and their use by defendant as aforesaid.*"

In the petition proper several pages are used in averring that the Attorney-General "by act of defendant became and was the representative of all shippers and passengers." Just how a railroad company could, by any act of its, make the Attorney-General the agent and attorney for Missouri shippers and passengers is left in darkness. We only call attention to this among other allegations in the petition for the purpose of characterizing the petition. That the construction given by the learned Attorney-General of his own petition, in his last brief, is a proper one (that he not only represents the State, but all the shippers and passengers) would seem to be borne out by the pleading itself. In fact it is urged that all these alleged excess charges are a trust fund in the hands of the defendant, and the Attorney-General for the State and all shippers and passengers is attempting to establish that trust and the amount thereof. With the petition as we view it, and with the construction thereof given us by the learned Attorney-General, we have no hesitancy in holding that the petition is one which attempts to collect these excess freight and passenger charges from the defendant not only for the State, but for the numerous shippers and passengers. That both the State and the shippers and passengers have a remedy, we have no doubt, but that is not the only question raised by this demurrer. Of these respective rights we may have more to say if occasion demands. The question uppermost at this point is, conceding the purpose of the petition to be as the Attorney-General admits, and as we construe it, what then should be its fate under

,the demurrer filed? This question can be approached from several angles, and these we take next.

III.  The petition shows that the State, and the shippers and passengers, are attempting to recover the excess, which was charged them by defendant upon freight and passenger carriage, over and above the last maximum rate statutes for freight and passenger rates. We use the word "statutes" in the broader sense, because the freight and passenger statutes involved are not only separate and distinct statutes, but were laws passed at different terms of the Legislature. Now, concluding, as we do, that both the State and these shippers and passengers can recover, the question is whether this petition is good as against the demurrer lodged against it. At this point it is not necessary for us to say whether or not the excess paid by the State is wrapped up in an injunction bond, if one was given in· the Federal case referred to in the petition. The petition does not aver that such a bond was given, and although the demurrer does aver that such a bond was given, the "speaking" portion of this demurrer is not really here for consideration and it might in one sense be improper to discuss it. If we discuss the bond question at all, it will not be in view of paragraph 12 of the demurrer, which demurrer is fully set out in the statement. A discussion of the question might be proper under some other clause of the demurrer.

Suit by State for Others.

It is clear to our minds from the allegations of this petition that the sundry shippers and passengers of this State were not parties to the Federal case pleaded in the petition, and their rights were not foreclosed by whatever may have been done by the court in that case. If by reason of having stood upon unequal vantage ground the defendant has compelled the shippers and passengers of this State to· pay more freight and passenger charges than under a valid law

they should have paid, then they are entitled to recover it back. Shippers and passengers, and railroad companies do not stand upon the same plane so to speak. People have to travel and freight has to be shipped, and if the carrier occupying a very advantageous position in the quarrel over the rate to be paid, compels the payment of more than the amount authorized by law, the excess can be recovered by such shippers or passengers. But that is not the question here. Under the facts pleaded the State of Missouri is not suing in its governmental capacity. It is suing just as any private corporation or individual would sue to recover money to which it alleges it is entitled. This petition gives the State and the shippers and passengers as plaintiffs in the petition. It is a petition in a single count, whether it be considered legal or equitable. For the purpose of this present point it is immaterial whether it be called one or the other. Section 1794, Revised Statutes 1909, prescribes the things which must be in a petition, whether it be one at law, or one in equity. Then section 1800 provides as follows:

"The defendant may demur to the petition, when it shall appear upon the face thereof, either: First, that the court has no jurisdiction of the person of the defendant, or the subject of the action; or, second, that the plaintiff has not legal capacity to sue; or, third, that there is another action pending between the same parties, for the same cause, in this State; or fourth, that there is a defect of parties plaintiff or defendant; or fifth, that several causes of action have been improperly united; or sixth, that the petition does not state facts sufficient to constitute a cause of action; or, seventh, that a party plaintiff or defendant is not a necessary party to a complete determination of the action."

The demurrer in the case at bar raises most of these questions. It is at least broad enough to raise the question that the plaintiff has not the legal capacity

to sue for the things sued for in this case. It is also broad enough to raise the further question "that a party plaintiff or defendant is not a necessary party to a complete determination of the suit." If it be conceded that the State, through its Attorney-General (as the Attorney-General admits), is suing to impound these excess charges not only for the State, but "for more than one hundred thousand shippers and passengers" then the question arises, can the State, or its Attorney-General, sue in such capacity? This is a proper ground of demurrer to a petition and one of the grounds lodged against this petition. Take a simple case. The Secretary of State has a hurried order for a number of State Reports. As the agent for the State he goes to the railroad agent and the agent tells him that he will not ship the box of books unless he pays him so many dollars. The price fixed is in excess of that allowed by law, but the books must go. That the State could recover this excess I have no doubt. But suppose on the same date ten shippers of stock and ten merchants of Jefferson City had a similar experience with the same railroad agent and were compelled to pay more freight than they should have paid under the law, would that authorize the State to sue for itself and these other twenty persons? We think not. If these freight and passenger laws were declared valid, as the petition avers, the fact of a trial of their validity in an injunction suit cannot change the character of the claims sued for in this petition and make them differ from the claims in the case we have put. The claims which the learned Attorney-General seeks to recover in the present action are but claims for excess freight and passenger rates, i. e., rates which were charged in violation of a valid law. The character of the claims cannot be changed by the mere fact that the validity of the law was tested. As to the character of the claims, the case at bar and the supposed case are identical. The accumulation of the former

may have resulted from a wrongful suspension of the law—a wrong charged to the defendant by the petition. The latter arose by the wrongful act of defendant's agent. We can see no possible difference between the claims sued for in this action, and the claims stated in our supposed case. We mean with reference to suing and recovering the claims. If the State could act for all in one case it could so act in the other.

In the first the excess was paid as alleged through an injunction wrongfully sued out—a wrongful act of the defendant. In the latter or supposed case we also have the wrongful act of the defendant. After all, and in both cases, the subject of recovery is the difference between what was charged and received, and what the law permitted to be charged. Broadly speaking there can be no difference in the two cases. When we get down to the real case before us much of the learning in the briefs is as so much waste paper. Cases are often befogged by imaginary issues, when the real issues are simple. The subject-matter of the recovery sought in this case is plain. Can the State sue for the shippers and passengers, who by chance may have claims against the defendant? In the language of section 1800, Revised Statutes 1909, the statute on demurrer, has the State the capacity to sue in that way and for that purpose? Without hesitation we say not. The State may sue for herself, if she has not otherwise entangled herself in the injunction suit (a question passed) and the shippers and passengers may sue for themselves, but the State has no power to sue for all as she has done in the present petition. On this ground the demurrer was well taken.

When the State brings suit for the recovery of excess passenger and freight charges it has had to pay (whether that action be upon the injunction bond or a straight suit for the money paid), it is suing as any other corporation or citizen would sue. It is not acting in its governmental capacity. As said by the

Indiana court in State ex rel. Attorney-General v. Board of Commrs., 101 Ind. l. c. 74: "When the State becomes a suitor in any of the courts, it is as much bound by the laws of the land, by the rules of pleading and practice, and by the decisions and judgments of the courts, inferior or superior, as any other suitor."

To like effect is the Oregon Court in State ex rel. v. Lord, 28 Ore. 498:

"It was also held that the State, suing in its corporate capacity for the protection of its property rights, stood in no different or better position in this regard than an individual. This doctrine is supported by high authority. ALLEN, J., in People v. Canal Board, 55 N. Y. 395, says: 'When the State as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors; that is, it must establish a case of equitable cognizance, and a right to the particular relief demanded.' And as is said by the eminent jurist in People v. Ingersoll, 58 N. Y. 14, 17 Am. Rep. 178: 'A distinction is to be observed between actions by the people or the State in right of the prerogative incident to sovereignty, and those founded on some pecuniary interest or proprietary right. The latter are governed by the ordinary rules of law by which rights are determined between individuals.' To the same effect is the doctrine announced in People v. Fields, 58 N. Y. 514. See, also, 2 High, Inj., sec. 1327. So that we then concluded the plaintiff herein occupied no better or superior position, from a legal standpoint, for enforcing the remedy sought to be invoked, than the plaintiff in Sherman v. Bellows, 24 Ore. 553. From this position we see no sufficient reason for receding, as we believe it to be sound in law, and supported upon reason and authority."

In People v. Railroad, 57 N. Y. 161, the New York Court of Appeals said:

"The people of this State have no general power to invoke the action of the courts of justice, by suits in their name of sovereignty for the redress of civil wrong, sustained by some citizens at the hands of others. When they come into court as plaintiffs in a civil action they must come upon their own right, for relief to which they are themselves entitled. It is not sufficient for the people to show that wrong had been done to someone; the wrong must appear to be done to the people, in order to support an action by the people for its redress. The suit now before us seems to have been instituted on a different theory. It sets forth various acts as wrongful, which if wrongful, affect no public right. These wrongs are wrongs to individual citizens and not to the State, and are remedial at the suit of the parties injured only."

In Oklahoma v. A., T. & S. F. Ry. Co., 220 U. S. l. c. 286, Mr. Justice HARLAN said:

"If after Oklahoma became a State the company still charged the Kansas rate on local business in Oklahoma and if those rat.. would have been illegal under any State regulations, or were, in themselves, unreasonable and purely arbitrary, a controversy, in the constitutional sense, would have arisen between each shipper and the company, which could have been determined by suit brought by the shipper in the proper State court, or even in the proper Federal court, where the controversy, by reason of the grounds alleged by the shipper, was one of which the latter court, under the statutes regulating the jurisdiction of the Federal courts, could take judicial cognizance. But plainly the State, in its corporate capacity, would have no such interest in a controversy of that kind as would entitle it to vindicate and enforce the rights of a particular shipper or shippers, and, incidentally, of all shippers, by an original suit brought in its own name, in this court, to restrain the company from applying the Kan-

sas rates, as such, to shippers generally in the local business of Oklahoma."

Other cases might be cited and quoted from but these will suffice. These courts get at the logic and reason of the thing. The State has no more right to collect my claim for excess freight or passenger charges, than would one of my fellow members upon this court. The State in such transactions, i. e., law suits to protect its property, stands just as do individuals, and its right to sue for itself and for others must be measured by the same rules. Measured by these rules it can't sue for other shippers and passengers, under the facts pleaded. Each claim is a case within itself. It is true that there may be one common fact, i. e., that each arose by the failure of the railway to obey laws, but on the other hand all other proof is different. If the sundry claims grow out of shipping contracts violative of law, you may have as many contracts as you have claims.

But we need not multiply words. The claim of each shipper and passenger against the defendant is a private right. The State has no right to enforce mere private rights, and on this theory could not sue for others. Then from the other viewpoint the State could not sue for others than itself without having assignments of the claims, or without having the other claimants join, and when they do so join then further complications as to the petition arise. We have separate and distinct causes of action in a petition of a single count. But even more we would have a judgment in parts of which the State would have no interest earthly. What interest would the State have in a finding and judgment under this petition that John Jones was entitled to recover from the defendant $20,000 in overcharges? We realize that there is an equitable rule which permits persons similarly situated to sue in the name of a class, but that rule has no application to a thousand individual claims dependent upon different

proof. The rule is largely dissipated by our code which requires all cases (legal or equitable) to be brought by the party interested.

As said before, the only thing which is common to all these claims is that they arose out of a failure to comply with certain laws which have been determined to be valid. In all other respects the proof thereof is entirely different as to each claim. We rule therefore that the petition is bad, because giving the petition the construction given it by its learned author, the State has not the legal capacity to sue in the manner here indicated. If not estopped by something in the injunction proceeding mentioned, it could sue for itself, but not for itself and all shippers and passengers.

IV. That a State should not be permitted through its public officers, to assist either side of a private controversy is not only recognized generally, but it is specifically recognized in Missouri. In the case of State ex inf. v. A., T. & S. F. Ry. Co., 176 Mo. l. c. 709, this court quotes with approval the following from section 1830, 2 Spelling on Injunctions and Other Extraordinary Remedies (2 Ed.):

**Intermeddling by State in Private Controversies.**

"The people of the State have no power to invoke the action of the courts of justice in this form for the redress of civil wrongs sustained by some citizens at the hands of others. When the people come into court in the name and right of sovereignty, as plaintiffs in a civil action, they must come upon their own right for relief, to which they are themselves entitled. It is not sufficient for them to show that wrong has been done to some one; the wrong must appear to be done to the public in order to support an action by the people for redress. This principle has been applied and illustrated in numerous cases both in England and the United States. Thus, where a turnpike company in making its road through private lands had failed to

compensate the owners according to the direction of the act, it was held that the company was merely a trespasser, and that the fact that the public was in no way interested in such controversy was a sufficient reason for not granting an information in the nature of *quo warranto*. In such case it is plain that entering and injuring lands of private parties is neither an abuse nor an assumption of corporate power, but a simple violation of private right. A provision of the company's charter requiring it to do certain things before entering on lands is inserted, not for public but for private security. By entering without complying, the company was simply guilty of a tort, as its trespassing agents would have been if no charter had been granted.''

Applying this doctrine to the case at bar. The State has the right to sue for itself in this case, unless it may have become implicated by some acts in the injunction case, but as to any other shipper or passenger it should not ''take a hand,'' if we may be permitted to use such a term judicially. Even the old equitable rule permitting one in the name of a class to sue, if such rule can stand under our code of practice, should be rigidly construed as to the State. If during this injunction proceeding John Jones, who was not a party thereto, had been compelled to pay excess passenger or freight charges, such controversy was a private matter between him and the defendant. The courts are open to him to adjudicate and adjudge his grievances, but the propriety of the State joining with him in the enforcement of this private right is quite a different question. As between citizens the hands of the State should be off. It would be unfair for the State to use public funds to assist certain private suitors in collecting their claims, when the mass of the contributors to the State's funds (the tax payers) had no such claims. The Attorney-General in civil matters represents the State in its private interests. To

that extent only he represents the people. In their private controversies he no more represents the people than does any private citizen. It was never contemplated by the Missouri Constitution, or any statute passed thereunder, that the State should use its good offices to collect from one citizen or corporation a sum due it from another citizen or corporation. Public funds are not appropriated for that purpose, and should not be used for that purpose. Private individuals in their controversies should pay the expenses of their own lawyers. Clearly the people's money appropriated for State purposes should not be used in the settlement of purely private controversies.

If the question as to whether a railroad corporation has charged me an excess rate, in either freight or passenger charges, is not a private controversy, I have read the books to no avail. If it were necessary (which it is not under the facts in this case) I would say that it should be held that the State under no circumstances, as a private suitor, should be permitted to go to the extent of drawing to it individual suitors, as against other individuals or corporations, of the State. It should not be permitted to use its powers, and its officers, and the public funds under the control of such officers, for the purpose of adjusting controversies between two of its citizens, although the State might have a similar controversy. This on the theory that as to the private controversies between citizens, the State's hands should be off. Respect for the State and State Government cannot be otherwise retained. If the State has a private grievance (as it would seem in this case) against one of its citizens or corporations, let it litigate that grievance, but it should not as a pure question of public policy, be permitted to assist in the adjustment of similar grievances as between its own citizenship. The State should be broader than that. It should not desire to intermeddle, even

if it could. It should not be so permitted, if it so desired. It should stand upon a higher plane. So that we again repeat, that on the theory upon which this action is brought it should not be maintained. That theory is, that the State can sue for all shippers and passengers. A simple analysis of the case shows that each shipper and passenger has a private right of action for the excess charges and can sue direct therefor. The State has such right in its private capacity, unless it has changed the character of its suit by what has happened in the injunction case. Whether it has so changed the form of its action, we need not now say. What we have said is sufficient for this case: Nor are we impressed with the contention of the learned Attorney-General that the shippers and passengers would be saved costs by this omnibus proceeding. They have to prove their individual claims. As it is, they have to go long distances with their witnesses, whereas otherwise they could sue at home where the evidence of their claims is to be found. On no reasonable theory therefore should the State be permitted to prosecute this suit for the purposes disclosed by the petition.

V. There are other questions urged by the demurrer that might be fatal to the petition, but we do not deem it necessary to discuss them. The question as to whether the State should look to the injunction bond, if such was given in the Federal case, is one of them. We desire now to express no opinion upon it. That is a matter for the learned representative of the State to determine. He does not plead that there was a bond. That the State has a right of recovery somewhere, if there was an injunction bond, is unquestioned. It is sufficient to say that for the reasons we have assigned the demurrer was well taken, and the judgment of the circuit court should be and is affirmed.

*Walker* and *Faris, JJ.*, concur; *Woodson, C. J.*, concurs in separate opinion; and *Blair, J.*, concurs in

part and dissents in part in separate opinion. *Bond,*
*J.,* dissents in an opinion filed. *Brown, J.,* not sitting.

WOODSON, C. J. (concurring):—Because of the
great importance of this case and the far reaching ef-
fect of the principles of law contended for by our
learned Attorney-General and his distinguished asso-
ciates, I have given the case more than ordinary con-
sideration. While I fully concur in the opinion of my
Brother GRAVES, yet there is one point I wish to ac-
centuate which he has not laid as much stress upon as
I should have liked for him to have done. For that
reason I wish to add the following observations.

It is true one person may in equity join with him
in a suit all persons as plaintiffs who are similarly in-
terested and situated, that is, all persons whose inter-
ests spring from or grow out of the same illegal act
or transaction may join in a common suit or action
against the wrongdoer. That idea, however, refers
to the wrongful act of the actor and not to the princi-
ple of law involved, the latter of which must, under
both the State and the Federal Constitution, be gen-
eral and not class legislation. To make myself clear,
suppose I should be indebted to two or more persons
in the sum of $500 each, and should convey my prop-
erty, say 100 acres of land, to my friend J. B. Jones
for the purpose of defrauding my said creditors. Un-
der those facts it is not only settled, but might be said
to be elementary, that all of my creditors might join
in one suit to set aside the deed of conveyance on the
ground of fraud; or that if I should convey my land,
say 200 acres, 100 to J. B. Jones and the other 100 to
John Smith, for the purpose of defrauding my credit-
ors, then one or all of my said creditors might sever-
ally or jointly, sue either or both Jones and Smith
jointly in an action to set aside the fraudulent convey-
ances. This is predicated upon the fact that the same
act or transaction which I committed was common to

and affected all of my said creditors alike, and there-
fore the same cause of action would exist in favor
of all of them or against all of them, as the case might
be.

The pioneer decision of this court upon that prop-
osition is found in the case of Tucker v. Tucker, 29
Mo. 350, and amplified and confirmed by NORTON, J.,
in the case of Donovan v. Dunning, 69 Mo. 436. From
that time to this the doctrine there announced has not
been questioned in this State; but that is not the ques-
tion here presented for determination, for there, as
stated, the same act of the wrongdoer affected all the
creditors, while in this case the acts complained of
by the State and her co-plaintiffs are several and dis-
tinct, growing out of the alleged violation of a statute
which, as before stated, must be general and not local
or special, under the State and Federal Constitutions.
If the contention presented and contended for by the
State is sound, then each and every person in the State,
or elsewhere, who should be defrauded by means of
false weights could join in one suit against the wrong-
doer to recover from him all sums he may have de-
frauded them of by virtue of the false weights, *though
made at different times, at different places, and of
course to different persons.* To illustrate: for in-
stance, which is a fact, I paid a few dollars overcharges
for both freight and passenger services, which, under
the decisions of the United States courts, were illegally
demanded and wrongfully collected from me by some
one of the numerous defendants involved in this liti-
gation, but that fact in no manner nor in any sense
gave me a common interest in or a joint cause of ac-
tion with my brother Barker for the excessive charges
which he also doubtless paid to some one or more of
the defendants mentioned under separate and inde-
pendent unlawful executions similar to those enforced
against myself. I respectfully submit that if I am not
correct in the observation just made, then all wrong-

doers of the State who have violated the same criminal statute, regardless of the time and place of the commission, may be jointly indicted, tried and convicted for the crime so committed, whether jointly committed or not. For instance, if John Smith, in the city of St. Joseph, Buchanan county, Missouri, should this day wrongfully shoot and kill James Wood, and should on the morrow, in the town of Agency, in the same county, wrongfully shoot and kill James Wright, he could be legally indicted for both offenses in the same indictment and tried at the same time for both crimes. And with equal logic he might be indicted, tried and convicted of any other offenses committed at other times times and at other places provided only that each and all of said acts and crimes violated the same criminal statute. Nor, under our system of jurisprudence could it be logically contended that, should I, with force and arms, disposses two or more persons of their homes in the county of Cole, they could lawfully join in one cause of action to dispossess me of the possession that I had unlawfully obtained, notwithstanding the fact that both or all of my said acts were in violation of the same statute regarding forcible entry and detainer. This is unquestionably the law of this State. It is equally clear in the case at bar. The mere fact that the defendant overcharged our learned Attorney-General and myself, in violation of the two cent passenger and the maximum freight rate statutes, does not give us a joint cause of action against the defendant, notwithstanding both acts of the defendant were and did violate the same statute. This, I suppose, will not be seriously disputed and in fact I do not understand that counsel for the State and other plaintiffs contend that such is the *declared* law of this State or in this country, but insist that this court should apply the old principles of equitable procedure mentioned to the new facts and conditions here existing which for the first time have ever been called to the attention of any court in this

country for determination. But learned counsel must observe that the old principles of equitable procedure referred to by them are not applicable to legal propositions, whether statutory or of common-law origin. Those principles of law or procedure apply to the acts of man which are the facts of a case, because they bring the interest of all of that class in common with each other. In other words, the law governs the facts and the facts do not govern the law, or at least should not.

With commendable zeal our learned Attorney-General has insisted that this court should stretch the principles of procedure before mentioned to cover this new condition of affairs that has never been presented to a court in this country before, and asks this court to apply the same to the facts of this case. However much we might be disposed to do so, in order to meet what appears to be the justice of the situation, yet it must be remembered that we are not the law-making power of the State and have no right to make, but only to decide, the law as it is, as declared in the old maxim, *Jus dicere et non dare.*

For the reason, among others stated, I agree to the opinion of my learned associate.

BLAIR, J. (concurring in part and dissenting in part).—There is no doubt of the correctness of the conclusions reached in the principal opinion that the Attorney-General cannot maintain this action in behalf of individual shippers and passengers from whom defendant has exacted charges in excess of legal rates. With that conclusion it is necessary to agree unless established principles are ignored. It is also clearly evident that the opinion is right in holding that actions may be maintained by individual shippers and passengers and by the State, in the same manner as an individual, for such excess charges as they have, respectively, been compelled to pay. It does not seem to follow, necessarily, however, that this petition does not state a cause of action in behalf of the

State which is separable from those allegations designed to present the State as the representative of individual shippers and passengers or as a member of a class to which all belong. In view of the conclusions reached in the principal opinion, which are undoubtedly correct, as above stated, this last question is of no great practical importance, since the State can reinstitute its action. Nevertheless, it is my opinion that the allegations relative to the representative character of the State and those inviting others with like claims to join, are separable and do not give the petition a multifarious character. These allegations should be disregarded and the State permitted to proceed with its action for such sums, if any, as are due it on account of such overcharges as it has been compelled to pay defendant.

## DISSENTING OPINION OF HENRY W. BOND, JUDGE.

### I.

Being unable to agree with the views expressed in the learned majority opinion or the disposition of the case made by it, I herewith file my dissent.

The case is here on the appeal of the plaintiff from a final judgment for defendant following the sustention of a demurrer to the amended petition. Both of these pleadings are set out in the majority opinion. They speak for themselves, and it is *their* language *alone* which must fix their meaning and determine the questions presented for review. [Ashby v. Winston, 26 Mo. l. c. 213; Hamilton v. McLean, 169 Mo. l. c. 69; Kerr v. Simmons, 82 Mo. l. c. 275; Vaughan v. Daniels, 98 Mo. 234.]

*Defective Pleading of Perfect Cause of Action.*

Taking the petition first, the State of Missouri, as the *only* party plaintiff, alleged that defendant was indebted to it in the sum of fifty thousand dollars for

illegal charges for transporting its agents and its property during the pendency of an injunction awarded by a Federal court against the enforcement of the rates prescribed for such services by the laws of this State; that said injunction was dissolved on appeal by the Supreme Court of the United States, and the law fixing the rates for the carriage of persons and goods adjudged to have been valid from the date of its enactment; that the defendant acquired no title or ownership of the money which it had exacted from the plaintiff during a period of seven years; that the destruction of the State records prevented the setting forth of the very numerous and complicated items of the amount which plaintiff was compelled to pay for the hauling of its property to the various public institutions, but that defendant has a knowledge of all of such items and a full record of the same; that they can only be ascertained by an accounting and a discovery. The petition alleges that many other persons have similar rights to a recovery from defendant. The petition prays for an accounting and discovery of the amount unlawfully taken from plaintiff, and for the appointment of a referee, and for judgment for the sum ascertained. It also prays "that all persons and claimants similarly situated be *permitted to come in* and file their claims and *become parties* hereto," and obtain similar redress, and for general relief.

Taking the demurrer next. Of the fourteen grounds stated only two can have any relevancy to the facts stated in the petition, the others are either repetitions or obviously untenable as *not* being confined to the allegations contained in the petition. [Story, Eq. Pleadings (10 Ed.), sec. 448; Hubbard v. Slavens, 218 Mo. l. c. 622.] Those which need be discussed are, to-wit:

"2. Because the petition does not state facts sufficient to constitute a cause of action against this defendant.

"3. Because plaintiff in said petition has improperly united alleged claims or alleged causes of action of persons not named as parties plaintiff to said suit."

The only questions which can arise on these demurrers are, first, whether the State has alleged a cause of action for itself; second, if so, whether that cause of action has been destroyed by the allegations in the petition that other suitors have similar causes of action which could be litigated herein if they should be *permitted* to become parties. These are the only questions which can arise on this appeal from a judgment *finally* dismissing plaintiff's suit.

We will first inquire as to the right of the State to recover. If that shall be affirmed, then the first demurrer, which goes to the entire petition, must be overruled, for the rule is inexorable that a petition which states *any* cause of action, however defectively or imperfectly, is not subject to attack by a general demurrer. This is so elementary and has been so repeatedly affirmed that we shall only call attention to two instances of the utterances of this court on the subject, to-wit:

"This court has repeatedly held that where the petition stated in the same or different counts, several grounds for a recovery, it is error for the court to sustain a general demurrer to the petition." [Johnson v. United Railways, 243 Mo. l. c. 288, per WOODSON, J.]

"Though the petition is very inartistically drawn, we regard its allegations as tantamount to a cause of action defectively stated and not a defective cause of action; in which former case its defects cannot be taken advantage of by a general demurrer or its equivalent, an objection, as in this instance, because it does not state facts," etc. [Water Co. v. City of Aurora, 129 Mo. l. c. 584, per SHERWOOD, J.]

The State as a public corporation is endowed with all the rights to sue in equity or at law which are pos-

sessed by other corporations or by natural persons. Having the power to make contracts or suffer wrongs, it has the inherent right to bring a suit to enforce the one or redress the other. Like any other suitor, therefore, it was entitled to bring an action through its proper officer for any wrongs or damages sustained by the wrongdoing of the defendant. [State ex rel. v. Williams, 221 Mo. l. c. 260-1; State v. Moody, 202 Mo. l. c. 124; Brown v. State, 5 Colo. 496.] Hence the primary inquiry is whether the petition filed by it states facts sufficient to warrant a cause of action for which redress may be had in equity or at law. In determining this, all irrelevancy or surplusage will be left out of view and regard will be had to those allegations which are essential to the statement of a ground of recovery. If when that is done, enough is found to be stated to show the infraction of any equitable or legal right of the State by the defendant, then it must be held that the action of the trial court in sustaining the *general* demurrer now under review was without any authority of law.

The facts stated in the petition, thus considered, disclose all the elements necessary to the recovery of a judgment or decree by plaintiff against the defendant for the amount claimed in the petition. This for the reason that by its general demurrer, not having filed any motion for indefiniteness, the defendant admits its indebtedness to plaintiff in the amount and form alleged in the petition, or, as has been shown, that for seven years, and while defendant prevented the plaintiff from enforcing a *valid law,* it compelled the plaintiff, *against the terms of that law,* to pay defendant fifty thousand dollars made up of many distinct and various items forming a complicated account totaling fifty thousand dollars, all records of which in the possession of plaintiff have perished by fire, though a complete record thereof is in the control and custody of defendant.

In the light of reason and the adjudged law, these allegations contain the essentials of a cause of action for equitable relief, for in such instances equity possesses concurrent jurisdiction with courts of law. Indeed, if this suit had been brought on the law side of the court, as it might, for money which *ex equo et bono* belongs to plaintiff, the trial court would have *compelled* a reference under the express language of the statute giving it that power when "the examination of a long account on either side" is required, or where "the taking of an account shall be necessary for the information of the court," which compulsory reference would have practically converted this suit into one in equity. [R. S. 1909, sec. 1996; Reed v. Young, 248 Mo. l. c. 613-14; Williams v. Railroad, 153 Mo. l. c. 495; Small v. Hatch, 151 Mo. l. c. 306.] That a case like the one in hand may be brought in equity or at law, dependent on the nature of the accounting and the adequacy of the redress, is beyond doubt under the decisions in this State and elsewhere. Whether equity will take jurisdiction of an action otherwise of assumpsit for money had and received, depends upon the complication of the accounts and the inadequacy of the remedy at law, or some other independent ground of equity jurisdiction, such as discovery or fraud, or the existence of fiduciary relations. [1 R. C. L., pp. 222-3-4; Beggs v. Edison Electric Co., 96 Ala. 295; Pierce v. The Equitable Assurance Soc., 146 Mass. 56; State ex rel. v. Denton, 229 Mo. l. c. 195; Hagan v. Bank, 182 Mo. l. c. 337; Arn v. Arn, 81 Mo. App. l. c. 137; Coal Co. v. Slevin, 56 Mo. App. l. c. 111.]

In speaking of the essentials of a petition in equity, it was said by GANTT, J.: "It will be observed that the bill necessarily also calls for an accounting and discovery, which is everywhere recognized as another ground for equitable relief." [Hagan v. Bank, supra, l. c. 337.] So in a case where the court was powerless to compel a non-resident corporation

to render an accounting consisting of *complicated* items for money had and received, this court said (VALLIANT, J.): "Such an accounting is not beyond the jurisdiction of a court of equity that may have full jurisdiction of the corporation, but is beyond the jurisdiction of a court of equity that has only the limited or qualified jurisdiction over a foreign insurance company that is given by our laws to our courts." [State ex rel. v. Denton, supra, l. c. 196.]

Measured by these standards, it cannot be that the petition of plaintiff, as herein analyzed, fails to state a cause of action, cognizable either in equity or at law, for the amount which defendant illegally took from the plaintiff in the overcharges exacted for seven years. [McGrew v. Railroad, 230 Mo. l. c. 531; State ex rel. v. Railroad, 176 Mo. l. c. 717; Transportation Co. v. Sweetzer, 25 W. Va. 434; Heiserman v. Railroad, 63 Iowa, 732; Southern Ry. v. Ala. R. R. Com., 196 Fed. l. c. 560; Bellamy v. Railroad, 220 Fed. l. c. 878; Coal Co. v. Railroad, 52 Fed. 716.] The naked facts of the relations between the State, the only party plaintiff, and the defendant, pleaded in the petition, if proven, would have entitled the State as plaintiff to a judgment in the trial court. Those facts were sufficiently stated under the settled rules of pleading. [1 Cyc. 436.] A general demurrer can only lie for the *total* failure of the petition to state *any* ground whatever for relief, either at law or in equity. After excluding from the petition all matters of surplusage, there remains embossed on its face the statement of a clear, complete and concrete case for relief by the State for *itself* against the defendant, for an accounting in equity or upon assumpsit at law for money had and received. Necessarily, therefore, the demurrer for that the petition stated *no* cause of action should have been overruled. [Taylor v. Railroad, 207 Mo. l. c. 500; Otto v. Young, 227 Mo. l. c. 218; Bank v. Lyons, 220 Mo. l. c. 550; State ex rel. v. Tittmann, 103 Mo. l. c.

568; Steamship Co. v. Railroad, 144 Mo. App. 1. c. 54; Simpson v. Bantley, 142 Mo. App. 490.]

For the error of the trial court in sustaining the demurrer and dismissing plaintiff's suit for *itself*, and rendering final judgment for defendant, this cause should be reversed and remanded.

## II.

The right of the State to recover for *itself* being indisputable under the facts stated in its petition showing the nature and extent of the loss caused to it by the wrongdoing of defendant, it only remains to inquire whether it has *lost* that *right* by *inviting* other persons to become parties hereto for the purpose of asserting their own claims.

Suing for Self and Others Similarly Situated.

This question is made by the second and special demurrer (R. S. 1909, sec. 1801) quoted above.

Neither the prayer of a petition nor any exhibits thereto are subject to a demurrer. Nothing is open to that objection but the stating part of the petition. [Curry v. Lackey, 35 Mo. 1. c. 392; Saline Co. v. Sappington, 64 Mo. 72; Merrill v. Trust Co., 46 Mo. App. 1. c. 242.] After setting out specifically its own cause of action against the defendant, the State alleged in substance that divers persons have been similarly injured by defendant, and invited them to become parties to the action and set up their respective claims. It is this reference in the petition to outsiders that constitutes the ground of the special demurrer now under review. This is apparent from the language of the demurrer, which specifies that the "petition has improperly united alleged claims or alleged causes of action of persons *not named as parties plaintiff* to said suit." That form of stating the objection is as far as the demurrer could go, since the only party to the petition is the plaintiff, and its cause of action is

the only one alleged in the petition. There is not a line or a syllable in the entire petition which sets out the respective claims or causes of action of any other person, nor which mentions the name of any other party plaintiff. To prove this, one has only to read the petition. The pleader evidently thought his client's case belonged to a class, hence after stating explicitly the elements and amount of the indebtedness of the defendant to the plaintiff he alleged that other *unnamed* persons had claims of a similar nature, and asked that they be permitted to come in as parties in their own right and allege and prove their own claims. Every lawyer has within his experience knowledge of the bringing of suits wherein the plaintiff, suing for himself, also asks that other persons may come in and join as parties and allege and prove their separate demands. In a case where that is allowable, the practice is for the person who desires to join in the original suit to apply to the court having jurisdiction of it by a petition setting out his particular cause of action, and asking that he be allowed to join as a co-plaintiff upon terms. Such application to become a party is, *when* filed, subject to a demurrer and other defenses, but until it is made, there is no cause of action and no party plaintiff to be attacked by a demurrer, except those alleged and named in the original petition. Before the coming in of new parties, the original petition might be attacked by a motion to strike out the allegations suggesting the joinder of other parties, if their claims were not unitable, for the statute provides, in terms, to-wit: "If irrelevant or redundant matter be inserted in a pleading, it may be stricken out, on motion of the adverse party." [R. S. 1909, sec. 1815.] But a demurrer, which lies only for the *actual* misjoinder of *several* causes of action (R. S. 1909, sec. 1800), does not lie and cannot reach a mere *proposal* by the plaintiff to other persons to come in as parties and set up any causes of action they may have. In the

case at bar, no plaintiff exists but the State, and no cause of action has been set forth in the petition except the cause of action of the plaintiff for fifty thousand dollars unjustly withheld from it by the defendant. As yet no other cause of action *has been asserted* under the petition, and no other plaintiff has appeared or been added. Our statute on demurrers permits that objection to be made in cases where the statutory grounds have happened. To allow a demurrer before the actual existence of the statutory ground would not only abolish the authority of the statute, but would permit objection to be made for the happening of a thing which had not occurred when the objection was taken, and which might never occur. Such an absurdity is not tolerated in the science of pleading.

The answer to this special demurrer and to the other repetitions and variations of it wherein the defendant averred multifariousness and misjoinder of causes of action is, that no such defects are in the present suit by one plaintiff against one defendant, and where only one cause of action has been alleged. When, if ever, other parties shall appear and state their respective causes of action, the defendant may demur and obtain a ruling on a point *not now* presented by the petition. Our conclusion is that all the demurrers upon the assumption of multifariousness or misjoinder are bad for the reason that no such defects are contained in the present petition. Exactly the same ruling was made by the Supreme Court of North Carolina in a stronger case, for there the bill of plaintiff mentioned the names and causes of action of three other parties, on whose behalf, as well as his own, he prayed for a decree against the defendant, asking that they be allowed to come in and join him. In the decision of the case said the court: (NASH, J.) "The first cause assigned in the demurrer, is answered by the demurrer itself. It is, that the plaintiff has asked the court to provide for the relief of Chestnut, Robin-

son and Murphy, who are not parties to the bill. A demurrer is an allegation of a defendant, which, admitting the matters of fact alleged by the bill to be true, shows that, as they are therein set forth, they are insufficient for the plaintiff to proceed upon, or oblige the defendant to answer. Now the plaintiff asks relief for himself, upon a state of facts, which, if true, clearly entitles *him* to relief. His officiously asking the aid of the court, for others, who are not parties to his bill, and do not ask it for themselves, certainly ought not, and cannot, deprive him of his right. It is an equitable, as well as legal maxim, that *utile per inutile non vitiatur*." [Parish v. Sloan, 3 Iredell's Eq. (N. C.) l. c. 609.]

The demurrers in the case at bar are not well taken for another reason. The Supreme Courts of the United States (Brown v. Trust Co., 128 U. S. l. c. 412) and of this State (McGlothlin v. Hemery, 44 Mo. l. c. 355) have established the rule that in the nature of things multifariousness or misjoinder of causes of action cannot exist except there be two more causes of action united in one petition, each of which, *as stated*, will support a judgment. In the present petition only one cause of action is alleged. No other cause of action *is stated*, and no other party than the State is made a plaintiff to the present petition, hence it cannot be that it contains two or more distinct causes of action, each of which would support a judgment. All the demurrers interposed by defendant which purported to raise the questions of misjoinder or multifariousness are shown by the language of the petition to be purely *anticipatory*, since no such defects *now* exist in that pleading. It may be that the defendant was entitled to object to the allegations with reference to future joinder of other persons in the present suit, by a motion to strike them out as irrelevant and redundant. But defendant did not avail itself of that defense, which, if sustained, would not have affected the *con-*

*tinuance* of the suit by plaintiff. Clearly, defendant is in no position to ask that the erroneous judgment of the trial court dismissing plaintiff's suit and rendering final judgment for defendant should be affirmed, when all the trial court would have been authorized to do would have been to treat the *improper* demurrers as *motions to strike out*, and to have sustained them to the extent of expunging from the present petition as surplusage so much of its allegations as referred to the coming in of prospective parties having other claims against the defendant. That was the fullest extent to which, under any view of the law, the circuit court was authorized to go. It would have had no power, upon a motion to strike out parts of the petition referring to the claims of unnamed persons, to have made a ruling dismissing the valid cause of action belonging to the plaintiff, and certainly it had no such power when the only attack upon the present petition was in the form of an invalid and untenable demurrer under the statutes of this State and the universal rules of pleading.

Our conclusion is that there is no theory resting on reason or law which authorized the action of the trial judge in *dismissing* the *suit of the plaintiff* in this case, and entering judgment for defendant, and that his judgment should be reversed and the cause remanded, to be proceeded with in a manner consistent with these views.

### III.

What has been said disposes of all the questions presented by the *record* in the present appeal. Another question not appearing in the record has been

**Amount of Recovery After Injunction Dissolved: Bond.** argued in the brief of respondent and must arise on a re-trial of this case. That question is whether the right of the State to recover the money wrong-

fully demanded and received by the defendant, pending the continuance of the illegal injunction against the State, is limited by the amount specified in the bond given by defendant when it obtained the injunction?

If this were an action on the bond, or a motion under the statute to assess damages proximately caused by the injunction, then the bond given would be the measure of the liability of defendant, in the absence of any evidence that the injunction suit was a malicious abuse of process, although the damages sustained exceeded the amount of the bond. [R. S. 1909, sec. 2524-2525; City of St. Louis v. Gaslight Co., 82 Mo. 349; Holloway v. Holloway, 103 Mo. l. c. 284; Commission Co. v. Spencer, 236 Mo. l. c. 630; 2 High on Injunction (4 Ed.), sec. 1663.] But that rule has no application where, as in this record, the suit is not brought for injuries proximately caused by the injunction, but is brought to recover what the defendant exacted at its peril during the pendency of an injunction which was finally held to have been illegally awarded by the Supreme Court of the United States. What was the effect of the injunction in the Federal court? Simply to prevent the enforcement against this defendant of the State statutes regulating its charges. It could not and did not go further. The sole issue in the case was whether the State of Missouri had violated the Constitution of the United States in exercising its sovereign power to make laws for the internal regulation of its affairs. That issue was decided against the State by the lower Federal court, but its ruling was vacated and set at naught by the Supreme Court of the United States. Pending the final word of that great tribunal, the defendant in this case took the chance of violating the Missouri statutes, and compelled this plaintiff to pay fifty thousand dollars, contrary to the terms of the Missouri statutes. This was in violation of the law by defendant, who did it with imputed knowledge that

the ultimate decision of the constitutionality of the statutes it was disobeying was the sole prerogative of the Supreme Court of the United States, and that in the event that court should sustain the statutes as constitutional exercises of the law-making power of this State, every dollar which it had taken from the State while the question of its right to enact these laws was in issue would be an illegal and wrongful appropriation of the property of the State. The injury thus done to the State was not proximately caused by the writ of injunction, but was caused by the wilful act of defendant during the period it was endeavoring to overthrow the laws of Missouri. The damage thus inflicted was not, therefore, in any sense caused by the issuance of the temporary injunction, but was caused solely by the disobedience on the part of defendant of the statutes of Missouri, at a time when their invalidity had not been *conclusively* adjudged. The necessary consequence is that defendant, upon the final establishment of the validity of these statutes, became liable to the State for the money which it had wrongfully taken from it during the period of testing the statutes. There is no logical escape from this conclusion. The defendant, unwilling to await the action of the courts in determining the validity of the laws of this State, violated them in *advance,* under the license of a provisional ruling of a court of first instances, and after that ruling was annulled by the Supreme Court the defendant undertakes to set it up as a justification for the intentional violation of the statutes before a *final* determination of their binding force.

The plight of the defendant in this respect is not so good as the state of a party who has received money or property under a judgment which was subsequently reversed (for here the illegal charges began before a judgment *nisi*) yet in such cases the rule is unquestioned that the property so obtained must be restored to the owner. [2 Freeman on Judgments, sec.

481-2; 3 Cyc. 462; Trustees v. Fry, 192 Mo. l. c. 563; Lanyon v. Chesney, 209 Mo. l. c. 9; Turner v. Edmonston, 210 Mo. l. c. 421; Wangelin v. Goe, 50 Ill. l. c. 469.]

This differentiation of the claim of the State for the overcharges specified in its petition, from injuries proximately caused by the writ of injunction, is not only the necessary result of analytical reasoning on the subject, but has been affirmed in a recent decision by the United States Circuit Court of Appeals. [Bellamy v. Railroad, 220 Fed. 876.] Certain railroads had attacked the rate laws of the State of Arkansas by injunction in a Federal court of first instance. Upon appeal to the Supreme Court of the United States the Arkansas laws were fully upheld. Thereupon certain shippers brought actions to recover overcharges from the railroad, in the State court (declining to sue on the bond given in the Federal court). The railroad undertook to remove that cause to the Federal court. Upon appeal to the Federal Court of Appeals the cause was remanded to the State court. Said that court, in passing on the question as to whether the injunction bond was limitative of the rights of plaintiff: *"Parties from whom excessive rates had been exacted were not confined to suing on the bonds. They also had the right given them by law to recover the overcharges. That right was not destroyed by the injunction, but was simply suspended. As soon as the injunction was out of the way the right and remedy for its enforcement stood the same as if the injunction had never been issued."*

No judicature has gone further than the Federal courts in restricting the right of defendant in an injunction suit to a recovery of damages caused by the injunction to a suit on the bond. With that in mind, the United States Circuit Court of Appeals grasped at once the distinction between damages caused by an injunction and injuries caused by the action or con-

duct of the party who obtained the injunction, and held that those asserted by the State in this action were within the latter class, and hence it was not relegated in a suit therefor to an action on the bond. Our conclusion is, both on reason and authority, that the right of the State to recover in this case was not dependent upon nor limited by the terms of any bond which may have been given when the defendant sued out an injunction against the enforcement of its laws, in the Federal court.

## IV.

It is only necessary to say a word about the majority opinion. I understand it to concede the full right of the State in its corporate capacity to sue for the excess rates which it was compelled to pay defendant, just as any other person might. On that subject the language of the majority opinion is, to-wit: "Now, concluding, as we do, that both the State and these shippers and passengers can recover, the question is whether this petition is good against the demurrer lodged against it. . . . Under the facts pleaded, the State of Missouri is not suing in its governmental capacity. It is suing just as any private corporation or individual would sue to recover money to which it alleges it is entitled. *This petition gives the State and the shippers and passengers as plaintiffs in the petition.*" The underlined statement concluding the above quotation is clearly incorrect. The petition does not give any plaintiff except the State itself. It merely asks that others having similar demands be "permitted" hereafter to come in. It does not even name such persons. This is important, for if they had been named as parties plaintiff, and if their claims had been *so stated* as to authorize a judgment in their favor, then the right to join them could have been questioned by a demurrer for misjoin-

*Right of State to Sue.*

der of causes of action. But the petition copied in the majority opinion shows on its face that my learned brother has fallen into an error in that respect. That error, although inadvertent, is serious, for it is the sole premise of the argument of the majority opinion, which, without its support, loses all force.

The learned majority opinion takes another view inconsistent with the statements of the petition, which is that the State in this case is asking to recover the demands of other persons without an assignment of their claims to it. This conception of the petition is utterly at variance with the language of that pleading, which goes no further than to say that other persons should be permitted to come into this case and *collect their own demands*. There is no foundation in the petition for the statement that the State sought to recover judgment in its favor for the claims of any other person. On the contrary, the petition proposed that such persons alone should assert their own causes of action, and recover therefor in their own right. The only authority which is adduced in support of the foregoing incorrect view of the petition is the case of Oklahoma v. Railroad, 220 U. S. 277. When that State was a territory, under the jurisdiction of Congress, a Kansas railroad (Act of Congress, July 4, 1884) was empowered to enter there upon condition that the company should not charge the inhabitants a greater rate of freight than was allowed in Kansas, nor a greater passenger rate than three cents per mile. Congress, however, expressly reserved the right to regulate such rates "until a State government . . . shall exist" and then such State government shall be authorized "to fix and regulate such rates." After the State government of Oklahoma was organized, a railroad operated under this grant charged the inhabitants a greater rate for transporting oil and other products than was authorized by the laws of Kansas for such service. Wherefore, the State of Oklahoma, *as such*, brought its

original bill in the Supreme Court of the United States (Constitution of United States, article 3, section 1), asking the cancellation of the grant to the railroad, and a decree enjoining the railroad from charging the inhabitants more than the Kansas rates for transporting oil and other products. The court held that the bill was not maintenable, since the State had *no property interest* in the claims of its inhabitants against the railroad which authorized an injunction suit in the Supreme Court of the United States, where, under the Federal Constitution, the State could only come in in respect to matters to which it was a party, adding: "The opposite view must necessarily rest upon the ground that the Constitution when conferring *original* jurisdiction on this court 'in all cases affecting ambassadors and other public ministers and consuls and *those in which a State is a party*' (Art. 3, sec. 1), intended to include any and every judicial proceeding of whatever nature which the State may choose to institute, in this court, for the purpose of enforcing its laws, although the State may have *no direct interest in the particular property or rights immediately affected or to be affected by the alleged violation of such laws.* In the present case, the State seeks to enjoin the defendant company from charging more than the Kansas rates on the transportation of lime, cement, plaster, brick, stone, crude and refined oil. *But the State, as such, in its governmental capacity, is not engaged in their sale or transportation, and has no property interest in such commodities.* It seeks only, as between the railway company and shippers, by a general, comprehensive decree to enforce certain rates and to compel the railway company to respect the rights of *all* of the people of Oklahoma who may have occasion to ship such commodities over the railway." Thereupon, only because the State had *no claims of its own* the bill was dismissed.

It would be difficult to find a clearer authority for the *maintenance* of the present suit, where the State has a direct interest to the extent of fifty thousand dollars. This distinction between the two cases seems to have been wholly lost sight of in the majority opinion when it cited the above authority, although that opinion, as has been shown by the quotation therefrom, and in other language, expressly concedes that in the case at bar the State has shown a valid claim of its own for which it is entitled to sue and recover in its private capacity, expressing the latter thought in the following words, to-wit: "When the State brings suit for the recovery of excess passenger and freight charges it had had to pay (whether that action be upon the injunction bond or a straight suit for the money), it is suing as any other corporation or citizen would sue. It is not acting in its governmental capacity." This and similar passages in the majority opinion show the utter inapplicability of the doctrine of the Supreme Court in the case cited. There the State had *no property rights* nor *demands,* but was endeavoring solely to assert its capacity as *parens patriae* or general guardianship of the interests of its inhabitants. On the most familiar principles, it can never bring an action of that sort to redress the private wrongs of its citizens.

For the foregoing reasons I cannot follow the views of the majority opinion. In this case the State is concededly damaged under the pleading to the extent of fifty thousand dollars. It has come into court setting out the constitutive facts showing that injury. No case has been cited precluding that recovery. It is the sole plaintiff; no others have appeared and pleaded the elements of their right to recover. No applications have been filed for permission to join and recover judgment for themselves by any citizen of the State. There has therefore been no misjoinder of causes of action, for only one has been stated, that of the State.

Neither has the State asked that a judgment be rendered in its favor for any claim save its own. No attack warranted by the fundamental laws of pleading has been made on the right of the State to recover for itself its own loss. The demurrers filed are not addressed to the case stated in the petition, but purport to go beyond that and attempt to assail the petition for what has not been included in its terms. It is elementary that this cannot be done.

It follows that the judgment dismissing plaintiff's suit was patently erroneous and should be reversed and the cause remanded.

## SUPPLEMENTAL CONCURRING OPINION.

WOODSON, C. J.—I write this supplemental opinion because I did not have the aid of the able dissenting opinion filed herein, of my learned associate, Judge Bond, filed some six or seven days after the majority and my concurring opinion therewith were handed down, and consequently could not anticipate the views he would express upon the important questions involved in this litigation.

When I wrote said concerning opinion I proceeded upon the assumption, which, as I understood it, was practically conceded by the majority, if not by the entire court, that four legal propositions were determined or decided by the majority opinion—all of which were fully discussed and considered by all of us except Judge Bond, he being absent, before the opinion was written:

**Multifariousness.**

First, that the State *and the various individuals* who had been required to pay the excessive rates for passenger and freight transportation over and above the maximum statutory rates fixed by the Legislature for such transporation, were in fact parties to this litigation. And there can be no doubt of the fact that such was the understanding of the court and counsel

for all parties, for the obvious reasons: (a) that they, by counsel, asked leave to file briefs *amicus curiae,* which was by this court granted, and they were duly filed; (b) same counsel asked leave for time to argue the case with counsel for the State, and defendants, which was also granted; (c) that the court heard the oral arguments of counsel for the intervenors and read and considered their briefs filed in the cause along with those of the State and the defendants, and proceeded to decide the case, believing that all were parties thereto as the record in this case indisputably discloses.

My learned associate in writing his dissenting opinion has evidently overlooked these important and controlling facts in this case, which cannot and should not in fairness to the court or counsel, be overlooked or brushed aside in passing upon the character and sufficiency of the petition under the demurrer filed herein. At any rate, speaking for myself, I considered those persons parties to this suit, just as the State is a party thereto, and wrote my concurring opinion accordingly; and state here that the first intimation I received to the contrary, save by illustration in argument of counsel, is contained in the able dissenting opinion filed herein.

Moreover, I dare say that there is not a man, woman or child in this State who desires to recover the overcharges paid by them, but who believe and honestly believe that they are parties to this litigation and that whichever way it goes, they believe and feel that they will be bound thereby.

I also predict that if they should at this late date be convinced that they are not parties to this litigation they will naturally believe they have been misinformed regarding that important fact.

I know from remarks frequently made by the learned Attorney-General and his able associates, that they also understand and believe that the individual

passengers and shippers who have paid said excessive charges, are parties either to this or some one of the other actions of this character pending in this court, involving their rights to recover the same back from the railway company to which they were paid.

Second. That in a proper action the State and each and all individuals who have been unlawfully required to pay such excessive charges for passenger or freight transportation within this State, may recover the same back from the proper railway company.

Third. That the bond or bonds filed in the injunction suits instituted in the United States District Court, at Kansas City, are foreign to and constitute no bar or interference whatever with the rights of said parties to recover back any or all of said illegal exactions.

Fourth. In my opinion my learned associate, as disclosed by his dissenting opinion, has read more extensively than deeply regarding the functions of a bill of discovery. I have never understood that such a bill was ever designed to reach the matters he refers to.

Subpoenas *duces tecum* will reach each and every matter to which the dissenting opinion refers and therefore there is no reason or authority to resort to an extraordinary remedy to reach them. [State ex rel. v. Trimble, 254 Mo. 542.]

Fifth. That there is a defect of parties plaintiffs and defendants to this suit and an improper joinder of improper causes of action in the same petition, there can be no question, under the rules of pleadings in this State.

For this reason and for this alone I believe and so expressed myself that the petition filed herein was had upon demurrer. That it is multifarious and therefore violative of the common-law rules of pleading and the fourth and fifth paragraphs of section 1800, Revised Statutes 1909, there can be no question. They read as follows: "Fourth, that there is a defect of

parties plaintiff or defendant; or fifth, that several causes of action have been improperly united'' in the same suit.

These provisions of our code of civil procedure were intended to prevent and in my opinion properly so, the violation of the old principle of the common-law rules of pleading prohibiting multifariousness.

This ancient principle is so well known to both the bench and bar, as laid down by the old masters of the art of pleading, such as Chitty, Gould, Stephens and more recently the late Judge Bliss of this court, who by the way, was one of the best and ablest jurists who ever sat upon this or any other court of last resort in this country, that it needs no further comment.

From the inception of the jurisprudence of this State under both the common law and statutory rules of pleading, the petition or bill filed in this case is bad upon demurrer, as the numerous adjudications of this court clearly show. Some of the more recent cases involving this rule of pleading and adhering to the doctrine of multifariousness, as announced by the text-writers and confirmed by the statutes of this State are the following: Chaput v. Bock, 224 Mo. 73; Peniston v. Press Brick Co., 234 Mo. 698, and Trefny v. Eichenseer, 262 Mo. 436, l. c. 442.

In the last case cited our brother, Judge LAMM, recently retired from this bench, speaking for the entire court, BOND, J., in result, said:

"By parity of reasoning, in the latter aspect of the case, the reasons underlying the rule against multifariousness are in point. To illustrate: Under our Code there can be but one final judgment, no matter how many issues are framed in several counts. 'The judgment upon each separate finding shall await the trial of all the issues.' [R. S. 1909, sec. 1971.] Agreeable to that theory is section 2097, *Ibid.* Now, when different causes of action are bundled in one petition

in separate counts, which do not affect all the parties, it results that hazards, inconveniences, and other burdens are put upon litigants in the matter of appeals and steps incident to appeals, on points where on final judgment the shoe pinches one or another litigant or one or another group of litigants which are unfair and oppressive. Assuming (as is the case) there can be no appeal except from the final and only judgment on all counts, why should parties not interested in the second count, be bound to dance attendance or cool their heels in court awaiting the vicissitudes or delays in final judgment on the second count over which they have neither concern nor control, before they can take steps to be relieved from an adverse finding and judgment on the first count? If all the parties are the same in both, this sharp inconvenience and hazard are absent. They become but usual incidents to the litigation. Otherwise, otherwise. Peradventure, in litigation the eye of the lawmaker has not rested exclusively on the welfare and convenience of plaintiffs. It has blandly rested as well upon the welfare and convenience of defendants. Why not? Plaintiffs go into court of choice; defendants are lugged in —pulled in by the ears. Agreeable to those views is the reasoning of such cases as Chaput v. Bock, 224 Mo. 73, and Peniston v. Press Brick Co., 234 Mo. 698, which, not unprofitably, the curious may consult."

This same rule has been so frequently and clearly announced by this court in scores of cases from that of Wilkson v. Blackwell, 4 Mo. 428, down to the case just quoted from, it seems to me that it would be a piece of affrontery on my part to the intelligence and legal learning of the bench and bar of the State, to undertake, at this time, to add anything new or more convincing as to the existence of that rule and its applicability to the facts of this case to what has been so ably and clearly stated in the cases cited and the scores of others.

of like character to be found in the reports of this State.

For the reason stated I still concur in the majority opinion.